STATE EX REL. MOREHOUSE and another, Respondents, vs. HUNT and others, Defendants: NATIONAL GUARDIAN LIFE INSURANCE COMPANY, Appellant.

*March 12—June 24, 1940.*

For the appellant there were briefs by *Olin & Butler,* and oral argument by *E. L. Wingert,* all of Madison.

For the respondents there were briefs by *Roberts, Roe & Boardman,* attorneys, and *Harold Hanson,* city attorney, and oral argument by *Fred C. Suhr,* all of Madison.

On the motion for rehearing a brief was also filed by *Robert J. Cunningham* of Janesville, counsel for the League of Wisconsin Municipalities, *H. O. Wolfe,* village attorney of Shorewood, *George H. Gabel,* village attorney of White-fish Bay, *Harry P. Hoeffel,* city attorney of Appleton, *John W. O'Leary,* city attorney of Neenah, and *Roy R. Stauff,* city attorney of Wauwatosa, as *amici curiæ.*

The following opinion was filed May 7, 1940:

FOWLER, J. The action involves the construction of certain provisions of the zoning ordinance of the city of Madison. Neither the validity of the ordinance nor of the provisions herein involved is questioned. The appellant, the National Guardian Life Insurance Company, owns a building in a Class A district prescribed by the ordinance which limits the use of buildings within the district to use as single-family residences, except that nonconforming use of a building may be continued if the building was devoted to such use when the ordinance was enacted, sec. 62.23 (5) (d), Stats., unless such nonconforming use was thereafter discontinued, in which case it or any other nonconforming use by the terms of the ordinance is not permitted. The build-

ing involved was planned and constructed and is especially adapted to use as a college fraternity house, and was originally so used.

By the terms of the ordinance a certificate permitting a nonconforming use is required to be secured from the building commissioner of the city. On denial of such certificate the owner of the building may appeal to the board of zoning appeals, which may reverse the ruling of the commissioner. Any person aggrieved by a decision of the board of appeals may have a review thereof by the circuit court by *certiorari*. Sec. 62.23 (8) (b), Stats. On such review the court may "take evidence . . . which shall constitute a part of the proceedings upon which the determination of the court shall be made." Sec. 62.23 (8) (i), Stats.

The National Guardian Life Insurance Company applied to the building commissioner for a certificate permitting a nonconforming use of its building as a fraternity house. The building commissioner refused the certificate. The owner appealed to the board of zoning appeals. This board reversed the action of the commissioner. The plaintiffs, who own and occupy a residence in the district situated across a street from the building involved, procured from the circuit court a writ of *certiorari* running to the individual members of the board of zoning appeals, the building commissioner, and the owner of the building to review the decision of the board. The court reversed the decision of the board. The owner appeals.

The evidentiary facts involved are not in dispute. Construction of the building was commenced in 1922 before the ordinance was enacted. This, under the *Building Height Cases,* 181 Wis. 519, 530, 532, 195 N. W. 544, and *Rosenberg v. Whitefish Bay,* 199 Wis. 214, 225 N. W. 838, validated the original use. The building was occupied as a fraternity house up to March, 1932, when the fraternity moved out. In April, 1932, the appellant took possession

under a mortgage it held, and on September 1, 1934, procured title through foreclosure proceedings. From April 1, 1932, to September 1, 1934, the building was operated by appellant as a rooming house. Under the ordinance, when a nonconforming use is permissible any other nonconforming use of the same classification is permissible. Under the ordinance fraternity houses and rooming houses are both permissible in Class B but not in Class A districts, as are two-family residences. There was thus no unpermissible nonconforming use up to September, 1934. The building was then leased to Dean Garrison for two years. Three successive leases for one year each were executed to Garrison. Each of these leases was subject to cancellation by the owner in case of sale. Each lease contained a statement that the premises were to be "used for the purpose of residence only." The rental paid under the first lease was $80 per month. Under the succeeding leases it was $100 per month. The 1936 lease gave to the lessee an option to purchase the premises for $16,500. The property was assessed in 1935 for $27,750, and in 1936 the assessment was reduced to $16,650. At the time of the reduction two families were living in the house. This reduction was made by the assessor at the suggestion of a Mr. Keachie, a contractor, who leased several residences from the appellant and who was employed by appellant to do maintenance and repair work on buildings owned by appellant, and who according to the assessor stated that the building could no longer be used as a fraternity house, and urged that the assessment was excessive in view of its use as a one-family residence. Keachie volunteered to see the assessor about reduction of the assessment on this and other properties of the owner, but was not authorized by the appellant to make any representations in its behalf or paid anything for his intercession. For about one year the premises were occupied by Dean Garrison and his family, two servants and a student, who was given a room in the

basement for caring for the furnace. From September, 1935, the lessee sublet as a unit two extra rooms, a kitchen and a bathroom in the basement to two unmarried women. From 1936 on, this unit was occupied successively by two married couples, the latter paying $30 a month rent and maintaining an independent telephone. The basement is entered through a main-floor entrance, and was arranged for use as a dormitory for fraternity members. The plans, which are in evidence, show a bath and six bedrooms, one now used as a kitchen, and another as a two-car garage. The building is adapted for fraternity rather than single-family use. The rooms on the first floor are a sun parlor, 35x12, library, 10x18, living room, 36x16, dining room, 16x16, kitchen, 18x10, lavatory and hall. The second floor has eight bedrooms, two of them sleeping porches, heated and sealed, two study rooms and two bathrooms. The bathrooms are large and each contains more than one washbowl and toilet. The building is adapted to accommodate twenty to twenty-five boys and has too many and too large rooms to be readily salable for single-family use. The owner has had the property listed for sale with real-estate agents during the years 1936, 1937, and 1938. The form of listing regularly in use by real-estate agents has been used and the building is referred to therein as a "residence," but in so referring to it, it was not intended to exclude sale to a fraternity. The leasing of the property originally or at any time has not been with intent or contemplation of abandoning its use as a fraternity house or giving up the right to so use it, but only intended as temporary and has been with the motive and for the purpose of protecting the property from deterioration and meeting as much of its carrying expense as might be. Owing to the depression and its effect on college fraternities when the premises were leased to Dean Garrison there was no present prospect of sale for use as a fraternity house, and no opportunity or prospect of oppor-

tunity to lease it for that purpose, but the owner has constantly contemplated eventual disposition to a fraternity· if opportunity offered.

It is stated in an affidavit on information and belief based on hearsay, which is not denied on behalf of the owner, that an offer of purchase as a residence for $11,000 was made in 1938, which was refused, and that recently an offer was made by a college fraternity to purchase it for $12,500 on condition that permission for use as a fraternity house under the zoning ordinance could be procured. The latter offer was apparently the occasion for the application for the instant permit. There have been no structural changes in the house of any material moment. One partition has been removed to make a larger bedroom, and a bedroom in the basement has been fitted for use as a two-car garage.

The building commissioner's denial of a certificate of nonconforming use was based upon the idea that by permitting the use of the house by Dean Garrison by himself and family for one year, the owner discontinued the nonconforming use to which it was theretofore subject, and that a nonconforming use could not thereafter be permitted. The appeal board was of the view that "the conclusion is inescapable that the owners of the property . . . have at no time discontinued or abandoned the nonconforming use to which the property was devoted, and for which it was constructed and is particularly adapted;" and that the use by Dean Garrison for the first year of his tenancy "was temporary in character, and did not involve a complete use of the premises" by his family as a residence;" and the board concluded that his use did not result in the forfeiture of the owner's right to continue the use of the premises as a fraternity, and that the owner's such right still continues.

The evidence before the board was in the form of affidavits. Several owners of single-family residences in the district expressed the opinion that if the occupancy of the

premises involved as a fraternity house were permitted the desirability of their property and its value would be diminished. The opinion of a representative of the owner who was acquainted with market conditions was that the value of the premises would be substantially more, and their sale value be substantially higher if such use were permitted. One occupant of a single-family residence in the district, who was contemplating buying it, and who was formerly connected with the Federal Housing Administration and passed upon many applications for loans in that capacity, stated, without being sworn, however, that in his opinion use of the premises as a fraternity house would adversely affect borrowing upon a mortgage from the Federal Housing Administration and others making mortgage loans, and that it would adversely affect the sale of residence property. It appears from the record of proceedings before the board that another building a block or so away from the instant building was in use as a fraternity house at the time of the hearing.

When the matter came before the circuit court the testimony of an engineer in charge of planning by the state planning board was received over objection. The assessor also testified before the court that the statements in his affidavit before the board were correct, and that his reduction in the assessment was in some part influenced by the statements of Mr. Keachie contained in the affidavit, and objection was made to the testimony on the ground that statements of Mr. Keachie were immaterial as not binding upon the owner, and the objection was overruled. The planning engineer testified that he was acquainted with the property, with the ordinance provisions, and with the general situation in the district, and that the use of property in a single-family residence district as a fraternity house is "detrimental to single-family use . . . by reason of increased noise and traffic hazard, the possible increased fire hazard and the

general production of conditions which are not compatible to single-family incumbency." He did "not think that under the zoning ordinance a nonconforming use may be devoted to a conforming use for one year and the nonconforming use be resumed at the end of such year on the ground that the conforming use was temporary only." In answer to hypothetical questions stating the evidentiary facts he was permitted to state, over objection, that in his opinion the facts as to use by Dean Garrison constitute "a discontinuance of the nonconforming use of such premises under the zoning ordinance of the city of Madison;" that on such facts and the additional fact that when this lease was made the owner "did not intend to abandon the nonconforming use but that it rented the premises to get what revenue it could and merely as a temporary stopgap arrangement until it could resume the nonconforming use or sell to some person who wanted the premises for a nonconforming use" his answer would be the same; and that upon the same facts his answer would be the same "if it appeared that the premises were large and spacious and there might be several rooms not in continuous use." To a question put by the court this witness answered that when Dean Garrison moved into the building with his family as described this, "as a fact," constituted "a more restricted use" than the former use as a fraternity house.

The plaintiff also testified before the court that if the permit applied for were granted the value of his property would be depreciated, partly because of increased traffic hazard due to the narrowness and grade of the street, and partly because of increased noise.

None of the evidence given by the expert before the court was competent. A person, although he be an expert in his business, cannot testify what the law is upon the facts in evidence. 20 Am. Jur. p. 672; 22 C. J. p. 634. The construction of the zoning ordinance under the facts existing

is a question of law. As to the plaintiff's testimony, the plaintiff was no more able to judge as to the matters to which he testified than was the court and his testimony was incompetent for that reason. Although the plaintiff's testimony was received without objection no weight could properly be given to it by the court.

The case is *certiorari*. When *certiorari* is invoked to review the action of an administrative board, the findings of the board upon the facts before it are conclusive if in any reasonable view the evidence sustains them. *Wisconsin Labor R. Board v. Fred Rueping L. Co.* 228 Wis. 473, 493, 279 N. W. 673. Under this rule the appeal board's view of the facts, so far as they appear from its decision, must be accepted as final and conclusive upon the trial court and upon us. The statutory provision for review by *certiorari* of the board's action, to the effect that the court may take further evidence and may consider it in reaching its determination, may warrant the court's overriding the board's findings of fact if the additional evidence received shows them to be erroneous, but where as here the additional evidence is incompetent it cannot be given that effect however it might be if it were competent. The view of the board that the owner did not intend to abandon the right of use of the building as a fraternity house but that the use of it for a residence was intended to be only temporary until opportunity should arise to sell it for that purpose, must therefore be upheld and given whatever legal effect it has.

The decision of the appeal board deserves some special mention. It consists of a carefully prepared document comprising several pages of typewritten matter. The board consisted of five members, all but one of whom concurred in the decision. The decision shows that the board fully appreciated its function, thoroughly considered all of the evidentiary facts presented to it, and thoroughly understood and properly construed the terms of the ordinance they were

administering. After stating the evidentiary facts in detail the decision states:

"We are left with only one fact from which we must determine the rights of the owner in this case, and that fact is the occupancy of the premises by one family for a period of one year, regardless of whether the occupant used all of the premises in the ordinary course of his occupancy. We do not believe that such occupancy for a period of one year constituted an abandonment by the owner of its right to continue the nonconforming use. The leasing to this occupant was of a temporary stopgap nature in view of the admitted purpose for which the premises were developed, and in view of the unquestioned physical layout. . . ."

"We cannot see that this type of occupancy constituted more than a temporary arrangement as far as any intent of either the owner or the occupant is concerned. It certainly could have no finality on the owner's right to nonconforming use unless continued indefinitely, and coupled with circumstances more persuasive than here presented."

That the board thoroughly comprehended the situation and its function is evidenced by the following, contained next after quoting at length from the decision of this court in *State ex rel. Schaetz v. Manders,* 206 Wis. 121, 238 N. W. 835:

"If the premises had remained vacant from September, 1934, to September, 1935, and occupancy as it has existed since 1935 had been continued, no possible question could now be raised as to the owner's rights. Are we now to say that because of temporary use from September, 1934, to September, 1935, of a substantial portion of the premises by one family, said use has for all time deprived the owner of a nonconforming use right, which he has never in any other manner indicated that he intended voluntarily to abandon? We do not believe this narrow interpretation is the intent of the ordinance."

The decision concludes as follows:

"The conclusion is inescapable that the owners of the property here involved, have at no time discontinued or

abandoned the nonconforming use to which this property was devoted, and for which it was constructed and is particularly adapted. We are of the opinion that such conforming use as existed during the year September, 1934, to September, 1935, was temporary in character, did not involve a complete use of the premises, and, therefore, did not result in the forfeiture of the owner's right to continue the nonconforming use which has existed at all times since the building was erected, and still continues."

The quotations from the decision of the board above given show that the board concluded as fact that lapse for a year of the nonconforming use before resuming or adopting another lawful nonconforming use, was a reasonable time in which to resume or adopt such lawful nonconforming use; that devotion to a conforming use for a year, under a lease not precluding subletting for a lawful nonconforming use, is not an unreasonable time in which to resume or adopt a lawful nonconforming use; that lapse of the conforming use under either of the above situations is consistent with and does not constitute an abandonment of the nonconforming use, and that under the facts of the instant case the owner by leasing the premises to Dean Garrison and permitting him to use them as a one-family residence for one year did not intend to abandon or discontinue Class B use.

The question remains whether the owner's intent in respect above stated operates to avoid the language of the ordinance declaring that discontinuance of a nonconforming use prevents resumption of that use.

Although the letter of the ordinance is as stated the letter need not necessarily be applied. *State ex rel. Schaetz v. Manders, supra.* "The letter killeth but the spirit giveth life." If the resumption of the nonconforming use is within the spirit of the ordinance, although contrary to its letter, the spirit rather than the letter governs.

That mere cessation of a nonconforming use under the terms of a zoning ordinance does not destroy the right to

continue it or prevent resumption of it was held in the *Manders Case, supra.* Under the rule of that case, discontinuance involves more than mere cessation. It involves abandonment. Under that rule, had the owner kept the premises vacant, waiting opportunity to rent or sell to a fraternity, the nonconforming use would have continued. Under the reason of that rule, had the owner, under the finding of fact as to the owner's intention, employed a caretaker for the house this would not have operated as a discontinuance. Or had a caretaker been permitted to occupy the house with his family as part or even full compensation for his services, this would not, under the reason of the rule, have constituted a discontinuance of the nonconforming use. May this not be reasonably carried one step further; and may it not be rightly held, that renting the premises for family use for $80 a month, a sum not constituting reasonable return on the value of the property as then assessed or as then valued by the owner, but as a mere temporary matter and with intent that the nonconforming use be resumed when opportunity therefor should arise, did not constitute a "discontinuance" of the nonconforming use?

It seems to us, *a priori,* that the question next above suggested should be answered in the affirmative. Manifestly it is as much the purpose and intent of the zoning ordinance to protect the owner's right to a nonconforming use, as to protect the right of single-family owners to prevent nonconforming uses. This is true notwithstanding that the general purpose of a zoning ordinance is to restrict uses of buildings according to the terms of the ordinance and to require conformance as speedily as it may under all the circumstances reasonably be accomplished. There is nothing in the instant ordinance saying how long cessation of a nonconforming use shall continue in order to constitute a deprivation of that use, a provision ordinarily, or at least often, contained in zoning ordinances. It must be conceded that cessation of a

day or a month does not work deprivation of a nonconforming use, and there being no designated period, it must then be a matter of how long upon reason, cessation, under all the facts of the case, must continue in order to work deprivation. Had Dean Garrison immediately sublet the basement as a unit for use and occupation by a small family that would not have constituted a violation of the ordinance, because two-family residences and fraternity house use are both uses prescribed for Class B districts. Two-family residences are as much a nonconforming use in Class A districts as fraternity houses. Use as a two-family residence in such a district is no more a restricted use or a more restricted use under the ordinance than use as a fraternity house. The term "restricted use" in the ordinance refers to the restrictions of the ordinance, not to whether as the trial court seems to have thought, judging from its question to the planning engineer and by his statement in the record made during progress of the hearing: "It seems to me that there are two questions here. Whether a nonconforming use has been discontinued; and whether there is a reversion to a more restricted use." The language of the ordinance here involved is: "Whenever a nonconforming use of a building has been changed to a more restricted use or to a conforming use, such use shall not thereafter be changed to a less restricted use." This means, as applied to the instant ordinance, that when a use permitted in Class C districts but prohibited in Class B and Class A districts is in existence in a Class A district when an ordinance is passed, and that use is continued or changed to another use permitted in a Class B district, this prevents a reversion to the Class C district use, and a change to a conforming use prevents recurrence to a Class B district use. What is "in fact" a more restricted use in the opinion of the trial court or the planning engineer who testifies before the court is immaterial unless by more restricted "in fact" they meant more restricted by the terms

of the ordinance. The material portions of the ordinance are set forth in the margin.[1]

Of the cases cited in the briefs the one that most directly bears on the instant case is *State ex rel. Schaetz v. Manders, supra.* It is there said, that on cessation of a valid nonconforming use an owner "is privileged to take a reasonable time at least to secure either a tenant or a purchaser" for his building, page 123. "Some time" is "necessarily required." "The word 'discontinuance' as it is used in the ordinance is synonymous with abandonment. It connotes a voluntary, affirmative, completed act." "The right secured to the owner by the terms of the ordinance is not lost by either accident or unpropitious circumstances over which he has no control, which brings about a mere suspension of the nonconforming use. It is a right extended to him to be enjoyed by him until he voluntarily relinquishes or abandons it." Such cessation as is involved in this case and such temporary use

---

[1] Section 16.09 (1) : The lawful use of land existing November 20, 1922, at the time of the adoption of the regulations contained in this chapter, may be continued, although such use does not conform to the provisions hereof, but if such nonconforming use is discontinued, any future use of said premises shall be in conformity with the provisions of this chapter.

(2) The lawful use of a building existing November 20, 1922, at the time of the adoption of the regulations herein contained, may be continued although such use does not conform with the provisions hereof, and such use may be extended throughout the building, provided no structural alterations, except those required by law or ordinance, are made therein. If no structural alterations are made, a nonconforming use of a building may be changed to any use permitted in the same use district as that in which the use existing at the time of the adoption of the regulations herein obtaining on November 20, 1922, is permitted according to the provisions of this chapter, provided that whenever a use district shall be hereafter changed, any then existing nonconforming use in such changed district may be continued or changed to a use permitted in the same use district as that in which the existing use is permitted, provided all other regulations governing the new use are complied with. Whenever a nonconforming use of a building has been changed to a more restricted use or to a conforming use, such use shall not thereafter be changed to a less restricted use.

of the premises as a single-family residence did not, as the appeal board decided, amount to a "voluntary relinquishment or abandonment" of the original nonconforming use. Such change of use as the owner permitted was practically forced upon it by circumstances over which it had no control and does not "connote a voluntary completed act of abandonment."

It is true that certain acts of the owner are indicative of abandonment of the nonconforming use. The original leasing for two years tends to support such inference. But the reservation of right to cancel the lease on sale of the premises is indicative of intent to sell for a fraternity house if opportunity arose. Putting in the lease for "residence only" indicates that the lessee should not turn the house into a tearoom or restaurant or a boardinghouse, but it does not preclude the idea of making it a two-family residence, as later was done, to the knowledge and with the implied assent of the owner, and as might have been done forthwith without violation of the ordinance. Whether under all the circumstances the owner's acts constituted a "voluntary relinquishment or abandonment" of the right to devote the premises to a Class B use depends on whether the use of the building as a single-family residence for a year was a reasonable time under all the circumstances, to allow the owner to devote the premises to the Class B use of a two-family residence. The appeal board thought it was. This was a question for the board to decide and its decision should be sustained.

Several other zoning-ordinance decisions are cited in the briefs, but only three of them involve the point of what constitutes a "discontinuance" of a nonconforming use. Of these *Paul v. Selectmen of Scituate* (Mass.), 17 N. E. (2d) 193, is nearest in its facts to the instant case. A license was required for conducting a restaurant. The licensing authority had granted such license. Action was brought for

its revocation. The premises were constructed and adapted for use as a restaurant. Disregarding prior uses, both as restaurant and residence, they were used as a restaurant from 1926 to 1933; entirely unoccupied from 1933 to 1935; occupied by caretaker nights only from January, 1933, to May, 1936. On March 30, 1936, a zoning ordinance was passed prohibiting a restaurant in the district in which the premises were situated. It will be noted that at this time the premises had not been used as a restaurant for three years. March 13, 1937, a license as a restaurant was granted. The granting of it was upheld by the court. The only thing in the opinion that applies to the instant case besides the statement as to the facts, so far as they do apply, is the statement that nonuser of a right to a nonconforming use does not conclusively show abandonment. The nonuser from March 30, 1936, when the ordinance was passed, to March 13, 1937, is comparable to the nonuser for a year here involved while the premises were occupied by Dean Garrison only as a one-family residence.

In *Appeal of Haller Baking Co.* 295 Pa. 257, 145 Atl. 77, it is stated, in effect, that where a nonconforming use exists when an ordinance is passed, but is not then being exercised, but property is designed and adapted to the nonconforming use, it may be resumed if shown that the owner intended to resume the nonconforming use.

In *People ex rel. Wohl v. Leo,* 109 Misc. 448, 178 N. Y. Supp. 851, a ruling of the trial court, affirmed without opinion on appeal to the appellate division, held, under an ordinance providing that a permitted nonconforming use existing in part of a building might be extended throughout the building and that no portion of a building devoted to a conforming use should be changed to a nonconforming use, that a valid nonconforming use of the first floor could be extended to the second floor although the second floor was devoted to a conforming use when the ordinance was passed.

We are of opinion that the judgment of the circuit court should be reversed, and the record remanded with directions to enter judgment affirming the ruling of the board of zoning appeals.

*By the Court.*—The judgment of the circuit court is reversed, and the record is remanded with directions to enter judgment affirming the ruling of the board of zoning appeals.

WICKHEM, J. (*dissenting*). My views upon this case need no extensive exposition. The ordinance in question provides:

"Whenever a nonconforming use of a building has been changed to a more restricted use or to a conforming use, such use shall not thereafter be changed to a less restricted use."

When the premises were leased by a written lease "for residence purposes only," and under circumstances which repel the inference that the tenant was a mere caretaker, the conclusion seems to me inevitable that the owner has changed the use of the building to a conforming use. The question is not one of intention to abandon a nonconforming use but whether the acts of the owner have brought him within the provisions of the ordinance above quoted. Cases in which the property has for a time remained idle are not, in my judgment, in point. In that situation the owner has made no new or restricted use of the premises and the sole question is whether the nonuse evidences an intent to abandon the former nonconforming use.

I am authorized to state that Mr. Chief Justice ROSENBERRY and Mr. Justice FAIRCHILD concur in this opinion.

A motion for a rehearing was denied, with $25 costs, on June 24, 1940.