GRAY WELL DRILLING COMPANY, Appellant, vs. STATE BOARD OF HEALTH, Respondent.*

*March 2—March 31, 1953.*

* Motion for rehearing denied, without costs, on June 2, 1953.

418

For the appellant there was a brief by *Rheingans & Ketterer,* attorneys, and *Oliver P. Rheingans* of counsel, all of Milwaukee, and oral argument by *Oliver P. Rheingans.*

For the respondent there was a brief by the *Attorney General* and *Stewart G. Honeck,* deputy attorney general, and

*Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

BROADFOOT, J.  The first allegation of error is that the complaint was not verified.  The statute provides that the board may proceed on its own motion or upon complaint in writing duly signed and verified by the complainant.  In this matter the board elected to proceed on its own motion.  Not only pleadings, but all proceedings before administrative bodies, are generally simple and informal.  The functions of administrative agencies and courts are so different that the rules governing judicial proceedings are not ordinarily applicable to administrative agencies, unless made so by statute. It is not the province of courts to prescribe rules of procedure for administrative bodies, as that function belongs to the legislature.  The legislature may either prescribe rules for pleadings and procedure before such bodies, or it may authorize the administrative board or agency to prescribe its own rules.  There is nothing in the statutes or rules of the State Board of Health that requires a complaint to be verified, unless the complaint is made by an individual.  The contention of the company that when the board elected to proceed by complaint such complaint should have been verified cannot be sustained.

The company filed a demurrer to the complaint.  The demurrer was overruled, and the company was directed to file an answer to the complaint.  The company admits that the board is not bound by common law or rules for judicial procedure, but contends that its proceedings should be within the limits and requirements of the statutes, should be orderly, and should conform to certain fundamental requirements.  It contends that one of these fundamental requirements is the right to file a demurrer, and the denial thereof results in serious prejudice to it.  The statutes and rules of the board provide that the persons served with a copy of a complaint shall file an answer thereto.  The hearing upon the issues

raised by the complaint and answer was conducted pursuant to the statute and the duly adopted rules of the board. The allegations of the demurrer were repeated in the answer and all of the issues raised thereby were passed upon by the examiner and the board, and were preserved in the record for review by the court. There was no prejudice to the company, and its contentions cannot be sustained.

The next contention upon this appeal is that ch. 162, Stats., is unconstitutional because of the failure of the legislature and the board to provide for a demurrer, and because under the present statutes and rules one individual may be the examiner, the prosecutor, and the jury, and that this results in a denial of due process.

The right to demur is not guaranteed by the constitution. It is a matter of procedure and, as we stated above, all of the issues raised thereby were considered and preserved in the record, and the company has not been prejudiced.

The board, by order, appointed one of its engineers to conduct the hearing. Specifically the company makes the following complaints:

"(a) That the same man was instrumental in framing the complaint in this matter;

"(b) The same man sat as an examiner;

"(c) The same man, in his guise of examiner, examined witnesses of the board and cross-examined witnesses of the company, through the medium of which he brought out considerable testimony not otherwise at issue in the pleadings and which could have been successfully resisted by proper objection in any court of law;

"(d) The same man, while sitting as an examiner, counseled with the attorney prosecuting the case on behalf of the board when said attorney had apparently reached an impasse;

"(e) The same man has in effect admitted his interest and bias;

"(f) The same man, interested as he was in the outcome, is the one who presented the matter to the board for its ultimate decision."

There is nothing in the record to substantiate the allegations made under (a), (e), and (f). They are pure conjecture. The examiner did, upon occasion, examine witnesses and some collateral issues were gone into. These collateral issues, however, were not included in the findings of the board and did not affect the result. The examiner did counsel with the assistant attorney general appearing on behalf of the board, but the record does not disclose any prejudice to the company. We can find no denial of due process.

Finally, the company contends that the evidence does not support the findings of the board. The complaint alleged failure on the part of the company to fully comply with the terms of a contract entered into with one Edward Haeger and wife for the drilling of a well. The contract was entered into November 8, 1950. The board specifically found that the company did fail to comply with the specifications and terms of said contract. This finding is supported by credible evidence to the effect that the pipe furnished for the well was substandard and proper pipe was furnished only at the insistence of a supervisor for the board; that Haeger was billed for a substantial sum of money prior to the time the same was due under the contract; that a waiver for the pipe and shoe to be delivered upon payment therefor was not given by the company until much later; and that the work was not started according to the contract.

The complaint also alleged second wilful violations of ch. 162, Stats., and of certain rules, regulations, and orders of the board. In that regard the board found:

"4. That the respondent has wilfully violated a second time section 162.04 (1), Wisconsin statutes; and has violated section 11 (b), Wisconsin Well Construction Code, second edition, revised, 1939; Wel 2.00, Emergency Regulations Relating to Well Casing Materials, adopted September 5, 1946, published September 12, 1946, effective October 12, 1946; and has violated Wel 1.082, Regulations Governing

Well Construction and Pump Installation, published June 27, 1951, effective July 27, 1951."

Sec. 162.04 (1), Stats., provides that applications for well-drilling permits be made before March 1st of each year. The record discloses that the company applied for its permit for the year 1950 on April 19th of that year, and that its application for its next year's permit was made on April 11, 1951. There is nothing in the record, however, from which the board could find that these were wilful violations of the statute. In fact, the testimony of an officer of the company showed that the delay was due to inadvertence.

Sec. 11 (b), Wisconsin Well Construction Code (2d ed. rev. 1939), reads as follows:

"All water used in constructing a well shall be from a known safe source, or sterilized by chlorination."

The record discloses that water was used in the construction of the Haeger well. The water was hauled by tank truck and most of it was obtained from a creek. This was not a compliance with the above-quoted section of the Well Construction Code. However, this amounted to but one violation of the rule. There is no evidence in the record that such a practice was followed in the drilling of any other well. The record does not support the finding of a second wilful violation of the code.

Wel 2.00, Emergency Regulations Relating to Well Casing Materials, effective October 12, 1946, provided that reclaimed pipe approved by an authorized representative of the board, might be used in lieu of the well-casing pipe specified in the Well Construction Code. The record discloses that reclaimed pipe was delivered for use in the Haeger well, but approval thereof was denied and the pipe was not actually used. Some reclaimed pipe was placed in a well for the Highland subdivision, Pewaukee, but approval was obtained and the well was completed with reclaimed pipe. Again we have

but one violation, whether wilful or not, of this provision of the code.

The final regulation found to be wilfully violated was a new regulation effective July 27, 1951, and it provided that well-construction reports are to be furnished to the board within ten days after completing the construction of a well. The report of completion of the Haeger well was not made within such period. There is nothing in the record to support a finding that this violation was wilful, and in any event, it is the only violation of that regulation shown in the record.

Thus, the record does not support any of the findings contained in par. (4) quoted above, nor any of the violations set out in the complaint under sec. 162.03 (2) (c), Stats.

In the board's decision, following its findings of fact, appears the following:

## "Conclusions of Law

"That by failing to fully comply with the specifications and terms of the contract for drilling the well the respondent has violated section 162.03 (2) (d) of the Wisconsin statutes.

## "Order

"Upon the basis of the foregoing findings of fact and conclusions of law, the board orders:"

We are not unmindful of the fact that the decision contained but one conclusion of law. However, the first part of the order indicates that it is based upon all of the findings of fact.

It may well be that these findings influenced the board in fixing the period of suspension provided for in the order. For that reason we believe the matter should be returned to the board for further consideration.

*By the Court.*—Judgment reversed and cause remanded for further proceedings in accordance with this opinion.