MISSIONARIES OF OUR LADY OF LA SALETTE, Respondent, vs. VILLAGE OF WHITEFISH BAY, BOARD OF ZONING APPEALS, Appellant.

*September 9—November 9, 1954.*

612

For the appellant there was a brief and oral argument by *Harry J. Hayes,* village attorney, and *Maxwell H. Herriott,* special attorney, both of Milwaukee.

For the respondent there was a brief and oral argument by *Richard B. Surges* of Milwaukee.

. STEINLE, J.  The question presented is whether the use and occupancy conforms to that permitted by the ordinance in the district where the premises are located. The facts are not in dispute. There is no challenge of the validity of the zoning ordinance with respect to its enactment. The classification prescribed by the ordinance is not unreasonable.

The appellant strongly contends that the use and occupancy of the premises by the respondent is not that of a family such as is only permitted in district 1, but that in fact its use is that of a convent, permitted only in districts 4, 5, and 6. .

Restrictions contained in a zoning ordinance must be strictly construed. A violation of such ordinance occurs only when there is a plain disregard of its limitations imposed by its express words. In *State ex rel. Bollenbeck v. Shorewood Hills* (1941), 237 Wis. 501, 507, 297 N. W. 568, this court quoted with approval from *Brown v. Levin* (1929), 295 Pa. 530, 534, 145 Atl. 593, as follows:

·' 'Covenants restricting the use of land are construed most strictly against one claiming their benefit and in favor of free and unrestricted use of property; a violation of the covenant occurs only when there is a plain disregard of the limitations imposed by its express words.' "

and stated that "This rule has been extended to restrictions in zoning and building ordinances." See *Chamberlain v. Roberts* (1927), 81 Colo. 23, 253 Pac. 27; *Darien v. Webb* (1932), 115 Conn. 581, 162 Atl. 690; and *Landay v. Zoning Board of Appeals* (1938), 173 Md. 460, 196 Atl. 293. This court in its opinion in the *Bollenbeck Case* at page 508 then declared:

"Upon the foregoing authorities, it must be held that building restrictions, whether contained in deeds or ordinances, must be strictly construed."

For the purposes of its zoning code the legislative body of Whitefish Bay has in precise language defined the term "family." It declares that a family is one or more individuals

living, sleeping, cooking, or eating on premises as a single housekeeping unit. Had it been the pleasure of the legislative body when defining the word "family," to have excluded in the district any dwelling use of premises there situated, by a group of individuals not related to one another by blood or marriage, it might have done so. Since there is complete absence of any such limitation, it seems clear that it was not the legislative intent to restrict the use and occupancy to members of a single family related within degrees of consanguinity or affinity.

It is to be noted that aside from the definition of the term "family" in the ordinance, the ordinary concept of that term does not necessarily imply only a group bound by ties of. relationship. ·

"Family" is derived from the Latin *"familia."* Originally the word meant servant or slave, but now its accepted definition is a collective body of persons living together in one house, under the same management·and head subsisting in common, and directing their attention to a common object, the promotion of their mutual interests and social happiness. *Stafford v. Sands Point* (1951), 200 Misc. 57, 102 N. Y. Supp. (2d) 910; 16 Words and Phrases (perm. ed., 1954 Supp.), p. 41.

In *Carmichael v. Northwestern Mut. Benefit Asso.* (1883), 51 Mich. 494, 496, 16 N. W. 871, 872, the court said:

"Now this word 'family,' contained in the statute, is an expression of great flexibility. It is applied in many ways. It may mean the husband and wife having no children and living alone together, or it may mean children, or wife and children, or blood relatives, or any group constituting a distinct domestic or social body. It is often used to denote a small select corps attached to any army chief, and has even been extended to whole sects, as in the case of the Shakers.

"We discover nothing in the statute implying a narrow sense, and we should not be inclined to attribute one where the result would cause injustice."

It is not within the court's province to add or detract from the clear meaning that the village board has expressed in its own definition of the word "family." To us it seems plain that the legislative body did not intend to restrict the use of premises in district 1 only to persons related by blood or marriage.

Does a group of priests and brothers living together in a single housekeeping unit constitute a family within the definition of the ordinance? The findings of the building inspector indicate that the respondent owns the property and uses it to house several priests. The term "to house" is not explained in the order or report of the building inspector. There is nothing of record by way of evidence or inference which contradicts the testimony presented by the respondent that the use of the premises is to be confined entirely to residential purposes for priests and brothers—presently five and in the future not more than eight—who do and will live, sleep, cook, and eat on the premises as a single housekeeping unit. At the premises they engage in no business of a commercial character; no lectures, missions, services, etc., are held for the public. The group merely lives upon the premises. Living includes, of course, the right of everyone who chooses,—lay or religious person,—to engage in spiritual devotion, separately or in conjunction with other members of the family, in the home. In construing a zoning ordinance we perceive no reasonable distinction in a room set apart in a residence for use as a chapel as compared to one devoted to purposes such as ballroom, music room, conservatory, or recreation room, which uses undoubtedly would be permitted although not specified in the ordinance. The work of those of the group not assigned to household duties, takes them away from the premises. The arrangement appears to be no different than were a group of school teachers, nurses, etc., in some collective capacity, to acquire the premises, use the same as a residence for the group, and pursue their avocations

away from the place. Such use in our opinion would be permitted by the terms of the ordinance. Those presently occupying the premises do not, in light of the purposes of the ordinance, lose their individuality by virtue of their membership in the religious organizations.

It does not appear that the residential use and occupancy of the premises by the respondent as revealed in the record, violate the letter or spirit of sec. 14.04 of the zoning ordinance.

Appellant contends that respondent's arrangement upon the premises constitutes a "convent," the use of which is permitted only in districts 4, 5, and 6. Sec. 14.07 of the ordinance specifically permits in district 4 the use of property for churches including rectories, auditoriums, and *convents*. That the village board is empowered to restrict the location of convents to districts other than residential, is not challenged.

In this regard the specific question with which we are confronted is: Does the living, sleeping, cooking, and eating in a single housekeeping unit arrangement, by a group of individuals who are priests and brothers of a religious organization, directed by their rules and by their superiors to do no more on the premises except reside there, and to carry on their religious, educational, and charitable work away from the premises, constitute a "convent" within the meaning of the ordinance?

Obviously, the building inspector classified the use of the premises as a convent, when, in his order, he indicated that respondent could properly use and occupy property in district 4. The Board of Appeals by its affirmance of the building inspector's order made like finding.

The construction of the ordinance under the facts of record is a question of law. *State ex rel. Morehouse v. Hunt* (1940), 235 Wis. 358, 291 N. W. 745.

We are bound under the rule of *State ex rel. Bollenbeck v. Shorewood Hills, supra,* to give a strict construction to the restriction in question.

This court has refused to apply a literal construction of a zoning ordinance in several cases, stating: "Although the letter of the ordinance is as stated the letter need not necessarily be applied. *State ex rel. Schaetz v. Manders, supra* [(1931), 206 Wis. 121, 238 N. W. 835]. 'The letter killeth but the spirit giveth life.'" *State ex rel. Morehouse v. Hunt, supra* (p. 396).

Ordinances, like statutes, are to be construed according to their intent. See *State ex rel. Jackson v. Leicht* (1939), 231 Wis. 178, 285 N. W. 335.

The term "convent" is not defined by the ordinance. Counsel for appellant directs attention to the fact that the word "convent" is epicene, and that in Webster's New International Dictionary, (2d ed.), unabridged, the term is defined as:

"An association or community of recluses devoted to a religious life under a superior; a body of monks, friars, or nuns, constituting one local community;—now usually restricted to a convent of nuns.

"A house or set of buildings occupied by a community of religious recluses; a monastery or nunnery;—now usually restricted to a nunnery."

Counsel also point out that the same dictionary defines a "monastery" as:

"A house of religious retirement, or of seclusion from the world for persons under religious vows, especially monks; a convent;—rarely, such a house for women."

The dictionary defines the word "recluse" as: "A person who lives in seclusion, as a hermit or a monk." The word "monk" is defined as "one who takes the monastic vows."

The term "friar" implies monastic living. "Monastic" pertains to "monastery and religious seclusion."

It appears from the foregoing that a convent is essentially a place where men or women bound by vows in a religious organization live a community life in seclusion or retirement upon the premises.

The record before us in no particular indicates that the individuals occupying the premises in question live there as recluses, or in seclusion or retirement. The evidence is undisputed that their vocational activities, except for ordinary personal and household duties, are directed entirely to situations and places away from the premises. The ministry is one of the learned professions. It appears that these professional men pursue their calling in places away from their home, as usually do others of a profession, as lawyers and doctors.

While it may be said that a convent is a place where persons bound by religious vows and under orders, dwell,—every place occupied as a dwelling by persons bound by religious vows and under orders is not necessarily a convent. The distinguishing characteristic obviously is the use for seclusion or retirement.

Here, the use is exclusively for ordinary residential purposes, no other. It is a use hereinbefore found to be permitted in district 1 by the ordinance. We are not able to declare that the respondent's use of the premises, as appears from the record, is that of a convent such as is permitted only in districts 4, 5, and 6. We cannot find that the use and occupancy is not within the letter or spirit of the ordinance. Should it become the legislative desire to further restrict the meaning of the word *"family,"* or enlarge upon the concept of the term *"convent"* from that of its usual acceptation, such pleasure could probably be accomplished with legal propriety. Upon this record it cannot be said that the respondent's use and occupancy of the premises is in plain

disregard of the limitations imposed by the express words of the zoning ordinance.

*By the Court.*—Judgment affirmed.