STATE EX REL. WASILEWSKI, Appellant, v. BOARD OF SCHOOL DIRECTORS OF CITY OF MILWAUKEE, Respondent.

*September 5—October 3, 1961.*

248

For the appellant there was a brief by *Karius, Kmiec & Kay* of Milwaukee, and oral argument by *Marjan R. Kmiec.*

For the respondent there was a brief by *John J. Fleming,* city attorney, and *Carl F. Kinnel* and *Harvey G. Odenbrett,* assistant city attorneys, and oral argument by *Mr. Kinnel* and *Mr. Odenbrett.*

CURRIE, J. While the briefs of the parties are in some disagreement as to the issues before us on this appeal, we deem them to be as follows:

(1) May a teacher, such as relator, having tenure under sec. 38.24 (18), Stats.,[1] be discharged for his conduct, in

[1] Sec. 38.24 (18) provides as follows:
"All elections or appointments of teachers in such cities [of the first class] shall be on probation, and after successful probation for three years, the election or appointment shall be permanent, during efficiency or good behavior, provided that teachers having taught three years or more in cities to which this section applies shall be

discussing matters of sex in his classes, which is alleged to transgress "good behavior" when the teacher has violated no rule promulgated by the superintendent or the board, and has received no advance warning that such conduct was disapproved by the school authorities?

(2) Assuming there is credible evidence to support the board's findings of fact with respect to the manner in which relator handled discussions of sex in the classroom, the telling of vulgar stories to his students, and the opinion he expressed on the subject of premarital sex relations, did such conduct justify his discharge and prevent the same from being arbitrary, oppressive, and unreasonable?

(3) Is there substantial evidence in the record which supports the board's findings of fact?

(4) Do the board's findings of fact sustain its conclusions of law?

(5) What would be the effect on the result of this appeal if this court should determine that one of the conclusions of law, and the findings upon which it is based, would not sustain the discharge?

(6) Did the procedure followed by the superintendent and the board in this matter violate due process?

(7) Did the suspension of relator without pay by the superintendent prior to the hearing violate sec. 38.24 (18), Stats.?

In passing on the afore-stated seven issues it is incumbent to keep in mind the scope of review by certiorari. In another teacher-discharge case, *State ex rel. Ball v. McPhee* (1959), 6 Wis. (2d) 190, 199, 94 N. W. (2d) 711, this

deemed to have served their term of probation. No teacher who has become permanently employed as herein provided by reason of three or more years of continuous service, shall be discharged, except for cause upon written charges, which shall after ten days' written notice thereof to such teacher, upon such teacher's written request, be investigated, heard, and determined by the board of school directors, whose action and decision in the matter shall be final."

court recently stated that a court in reviewing the action of an administrative board or agency in certiorari will go no further than to determine: (1) Whether the board kept within its jurisdiction, (2) whether it acted according to law, (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment, and (4) whether the evidence was such that it might reasonably make the order or determination in question.

### Necessity of a Rule Violation or an Unheeded Warning in Order to Constitute Misconduct.

Under the provisions of sec. 38.24 (18), Stats., a teacher having tenure, such as relator, may only be discharged for conduct which transgresses the bounds of good behavior or constitutes inefficiency. The first issue to be considered is concerned only with the question of what bad behavior would be sufficient cause for discharge.

Relator contends that the action of the board in discharging him constituted an error of law and a measure in excess of its jurisdiction. This contention is grounded on the fact that relator had violated no rule promulgated by the board, or the superintendent, and had received no advance warning that his handling of discussions of sex in his classes was deemed objectionable by school authorities. However, relator's brief makes it clear that he does not take the untenable position that there never could be bad behavior, which would justify the discharge of a teacher having tenure, in the absence of conduct which violated some rule or which took place after he had been specifically warned that such conduct would not be tolerated in the future.

Relator points out that authorities on the subject of sex education, as well as school administrators, are at opposite ends of the spectrum as to the extent to which sex should be taught, and that the board has failed to inform teachers to what extent they may teach this subject. At the hearing,

Superintendent Vincent was questioned by relator's counsel with respect to what would constitute proper sex education in the public schools, and what authorities in such field he would consider in devising a proper program of this kind. One of the authorities indorsed by Vincent was the extensive study of the subject made by the Secondary School Principals Association and reported in an issue of the association's bulletin.[2] In this issue a noted educator, Professor Lester Beck of the University of Southern California, states that, "In my opinion it is a mistake to confine sex teaching to a single course such as health or personal hygiene . . ." and he advocates that it should be taught "in any course where the teacher is inclined to discuss it." [3] Relator also stresses the fact that speech in itself is a subject with no particular topic or subject bounds and that the evidence at the hearing clearly establishes that nearly all of his discussions of sex in speech classes were in response to questions posed by the students.

Based upon the foregoing, relator argues that the board's action in discharging him for interjecting matters of sex education into his speech classes was arbitrary, oppressive, and unreasonable. However, such argument fails to recognize that the issue is not whether it was improper conduct for relator to discuss sex in his speech classes, but rather whether his handling of this topic was such a violation of recognized standards of propriety as to constitute bad behavior. Thus, if relator's discourses on sex in his speech classes had been conducted in such a manner as to constitute proper conduct in a biology class, they would not automatically have been converted into misconduct warranting discharge by the happenstance that they took place in a speech class, absent any rule of the school authorities prohibiting

[2] Bulletin of the National Association of Secondary-School Principals, Vol. 39, No. 215, Dec. 1955.
[3] Id., at page 16.

the same or any specific warning to relator from the principal or superintendent that sex was not to be a subject of discussion in speech classes. However, if relator's manner of discoursing on the topic of sex in his speech classes exceeded the bounds of the recognized standards of propriety, we deem that it constituted bad conduct which would warrant a discharge even though there was no express rule prohibiting it and he had received no warning to desist therefrom. As an intelligent person trained to teach at the highschool level, relator should have realized that such conduct was improper.

### Did the Findings as to Relator's Conduct Establish Bad Behavior Which Would Warrant His Discharge?

We are confronted with the question of what test should be applied in determining whether a teacher's method of presenting sex education transcends recognized standards of propriety. The problem is rather analogous to that confronting courts in passing on whether certain publications constitute obscene literature. See *State v. Chobot* (1960), 12 Wis. (2d) 110, 106 N. W. (2d) 286, and cases cited therein. The test, or standard, adopted in such obscene-literature cases is how the alleged offending publication is interpreted by the contemporary community. Unfortunately, when we apply the test of whether relator's conduct transgressed recognized standards of propriety of the contemporary community in which he taught, we are dealing with one of those illusive and indefinite concepts of the law, such as that of "due process," that defy precise definition.

In reviewing this record we are satisfied that the following findings as to relator's acts in his speech classes, establish conduct transcending the contemporary standards of propriety of the community in which he taught: (1) That relator walked from desk to desk during a discussion of houses of prostitution and indicated to each student

whether, in his opinion, such student was of such apparent age as to gain admittance to a house of prostitution; (2) that he told the "Schultz" and "cow" vulgar stories; (3) that he described the act of breaking the hymen of a virgin in such a manner as to give his students the impression that he was describing a personal experience—being an unmarried man he thereby may well have given the impression that he considered it proper conduct to violate the criminal statutes prohibiting fornication; (4) that in discussing premarital sex relations, he indicated to his students that he believed in the same, although he qualified this view by stating that such relations might be objectionable under certain circumstances, such as where this practice violated religious beliefs; and (5) that he discussed premarital sex relations without pointing out to the students that there were state statutes prohibiting the same.

In arriving at this conclusion we are not unmindful of the fact that relator's speech classes were composed entirely of senior boys, and that the ages of such boys were from seventeen to nineteen years, inclusive.

There are sound reasons of policy why such conduct, by transcending the bounds of the standards of propriety of the contemporary community, constituted misconduct under sec. 38.24 (18), Stats. As was well pointed out by the learned trial court in his memorandum opinion, a teacher exerts considerable influence in molding the social and moral outlook of his students by his own precept, deportment, and example. This is especially true of a popular and effective teacher such as the record in this case discloses relator to have been. The importance of the teacher in molding the social and moral views of his students is well stated in one of the texts on education [4] as follows:

---

[4] Power, Education for American Democracy (1958), 27.

"If we agree that the moral virtues are not taught and learned in the usual way, or at least not in the same way in which reading and writing and arithmetic are taught and learned, then they are incorporated into the pupil's system of values through practice, example, and emulation. With respect to moral formation the role of the teacher may not be minimized, for he is the chief creator of the student's educational environment and the main source of his inspiration."

*Sufficiency of the Evidence to Support the Findings.*

In considering the immediately preceding issue, we have set forth certain conduct of the relator which has been determined to constitute misconduct warranting his discharge. Relator attacks the sufficiency of the evidence to sustain the findings of fact, whereby these enumerated activities were found to have occurred, as well as other additional findings of fact.

Our review of the testimony given at the hearing causes us to conclude that the board could reasonably make the findings which it did even though in some respects this court might have reached the opposite conclusion if it had been the trier of the facts. The applicable principle of law is well stated in *State ex rel. Morehouse v. Hunt* (1940), 235 Wis. 358, 367, 291 N. W. 745, as follows:

"The case is certiorari. When certiorari is invoked to review the action of an administrative board, the findings of the board upon the facts before it are conclusive if in any reasonable view the evidence sustains them."

The testimony relating to certain of the matters covered in the findings is in sharp dispute. We can perceive of no useful purpose which would be served by recounting the testimony of the various witnesses.

Relator particularly attacks the credibility of Gary Koeske, the student who made the first complaint to Superintendent

Vincent. Some of Koeske's testimony relating to what transpired in his speech class with respect to relator's statements on sex, and the time devoted to the topic of sex, was disputed by other students. Some of the testimony on disputed points given by students who testified in behalf of the relator appears more plausible than that given by Koeske. However, the judging of the credibility of witnesses lies solely within the province of the board and not this reviewing court. *State ex rel. Howe v. Lee* (1920), 172 Wis. 381, 384, 178 N. W. 471.

*Sufficiency of Findings to Support Conclusions of Law.*

The board's conclusions of law determined that both charges against the relator, lack of good behavior and inefficiency, had been proved. For reasons hereinbefore stated we hold that the findings of fact amply support the charge of lack of good behavior. However, we entertain considerable doubt whether the findings do support the charge of inefficiency when such findings are considered in connection with certain undisputed testimony in the record.

The testimony is undisputed that relator taught, and taught effectively, all of the material contained in the textbook used in his speech classes and outlined in the curriculum guide. All students were given an opportunity to speak and to take part in debates and symposiums. We are in full accord with the following statement appearing in the learned trial judge's memorandum decision:

"The finding of inefficiency must therefore be limited to the actual time used by the relator in the discourses and discussions constituting bad behavior. Considering other assignments required of and permitted by him as a teacher, the relator was not inefficient. The record indicates that in respect of everything but his bad behavior, his work was satisfactory—in fact, commended by his superior."

The amount of time devoted to discussions of sex in relator's speech classes, findings of fact Nos. 21 and 22, includes not only those instances in which the discussions exceeded the bounds of propriety but also parts of discussions on sex that were proper and did not exceed such bounds. If the time devoted to discussion of the problems of sex had been spent instead in discussing the United Nations or the atom bomb, we doubt if discharge on the ground of inefficiency based on such conduct could be upheld.

We prefer not to decide the point of whether the findings, considered in the light of the undisputed evidence, sustain the conclusion of law that the charge against relator of inefficiency was proved. For the purpose of deciding this appeal we shall assume that the findings do not sustain such conclusion.

### Effect of Presence of Findings or Conclusions Not Sustaining the Discharge.

Assuming that findings of fact Nos. 21 and 22, and the conclusion of law of the board thereon, which determined that the charge of inefficiency against relator had been proved, would not justify the discharge of relator, how does this affect the result of this appeal? The briefs of counsel in this case provide no answer to this question, nor do they cite any authorities bearing thereon. Surprisingly, independent research on our part has unearthed no authority which directly provides an answer.

It is not necessary to prove both bad behavior and inefficiency under sec. 38.24 (18), Stats., as a condition precedent to discharge. A finding of either, supported by the evidence, is sufficient. Therefore, if findings of fact Nos. 21 and 22 had been omitted and if the conclusion of law had determined only that the charge of lack of good behavior had been proved, we would have no hesitancy in upholding

the board's action in discharging relator as not being arbitrary, oppressive, or unreasonable. However, we are not satisfied that this is the sole test to be applied. Rather, we deem the correct test to be closely analogous to that used by the court in determining on appeal whether error, which has occurred during the course of trial, was prejudicial. In the latter situation, the test applied is whether the error affected the result. *Widness v. Central States Fire Ins. Co.* (1951), 259 Wis. 159, 166, 47 N. W. (2d) 879; *Koepp v. National Enameling & Stamping Co.* (1912), 151 Wis. 302, 307, 139 N. W. 179.

In *Gray Well Drilling Co. v. State Board of Health* (1953), 263 Wis. 417, 58 N. W. (2d) 64, this court reversed an agency order, and remanded the cause to the commission for further consideration, because certain findings of fact were not supported by the evidence even though other findings supported the order. The reason advanced by the court in so doing was that the erroneous findings may have influenced the agency in making its order. In a converse situation, where the court is satisfied that an unsupported finding or conclusion did not affect the result, no reversal and remand should be required.

We are satisfied in reviewing the record herein that the gravamen of the charges against relator was the impropriety of his manner of discussing sex before his speech classes and not the factor of the class time consumed in such discussions. Furthermore, we entertain no doubt that the board would have decreed relator's discharge regardless of how much or how little class time was consumed in such improper discussion.

In view of the foregoing, we conclude that the result of this appeal is not affected by whether the findings of fact and conclusions of law relating to the charge of inefficiency can be sustained.

*Denial of Due Process.*

Relator strenuously contends that there were defects in the procedure employed by Superintendent Vincent and the board which require that this court invalidate and set aside his discharge.

As previously noted, the scope of review in certiorari extends to whether the board or agency "acted according to law." The "law," as so used, refers not only to applicable statutes but also to the guaranties of "due process" found in the state and federal constitutions. In *State ex rel. Ball v. McPhee, supra,* we stated (p. 199):

"Construing the phrase 'acted according to law,' we deem the word *'law'* means not only any applicable statutes but also the common-law concepts of due process and fair play and avoidance of arbitrary action. As Mr. Justice FRITZ well stated in *State ex rel. Madison Airport Co. v. Wrabetz* (1939), 231 Wis. 147, 153, 285 N. W. 504, 'the cardinal and ultimate test of the presence or absence of due process of law in any administrative proceeding is the presence or absence of the "rudiments of fair play long known to our law." ' "

We find that all of the procedural steps required by sec. 38.24 (18), Stats., were complied with. These consisted of filing written charges, giving proper ten days' notice thereof to relator, and holding a public hearing by the board to act on such charges after request therefor had been made by relator.

In the *Ball Case* we held that the procedural requirements of the Wisconsin Administrative Procedure Act (ch. 227, Stats.), relating to the hearing and determination of contested cases by state administrative agencies, were applicable. However, we are satisfied that the defendant board is not an agency whose actions are subject to such act. This is because of the definition of "agency" set forth in sec. 227.01,

Stats. Such definition defines "agency," as used in the act, as "any board, commission, committee, department, or officer *in the state government,* except the governor or any military or judicial officer of this state." (Italics supplied.) Defendant board is only a municipal board of education, as distinguished from a board which is part of the state government.

This conclusion requires that we overrule the statement appearing in *State ex rel. Nyberg v. School Directors* (1926), 190 Wis. 570, 575, 209 N. W. 683, to the effect that a municipal school board is a state agency. Such statement read as follows:

"That the school board is an administrative body of the state and performing a state function, as distinguished from an administrative body of a city in the performance of a municipal function, was determined, and upon the contention made by the appellant here, in *State ex rel. Harbach v. Mayor,* 189 Wis. 84, 206 N. W. 210, and also in *H. Schmitt & Son, Inc., v. Milwaukee,* 185 Wis. 119, 121, 200 N. W. 678. See, also, *Milwaukee v. McGregor,* 140 Wis. 35, 37, 121 N. W. 642."

The three cases cited in the above quotation do not expressly hold that a municipal board of education is a state agency. The first two merely determine that education is a state and not a local function. The fact that municipal boards of education are concerned with a state, rather than a local, function does not make them a part of the state government as distinguished from the municipal government. The *McGregor Case* involved the board of normal school regents which beyond question is part of the state government.

There remains for consideration the issue of whether any of the alleged procedural defects attacked by relator amounted to a denial of due process. We are satisfied that they do not.

The first act complained of is that of the secret preliminary investigation made by Superintendent Vincent after receipt of the Gary Koeske complaint. The superintendent is the chief administrative officer of the city school system. As such it is his duty to investigate any complaints made to the board or to him that a teacher is guilty of bad behavior or inefficiency. Without conducting such an investigation, the superintendent would not be in a position to determine whether there existed good cause for the filing of formal charges against the teacher. Conducting the investigation in secret was not a violation of accepted concepts of fair play. This is especially true here where Vincent held an interview with relator at the conclusion of the investigation and obtained his explanation of the conduct which was the subject of the complaint.

Relator calls attention to certain statements made, and questions asked, by some members of the board which, he contends, disclose prejudice on the part of these members toward him and demonstrate that they had prejudged the controversy before hearing the testimony of relator's numerous witnesses. However, there is no showing that such board members based any of their conclusions upon anything extraneous to the testimony presented at the hearing. Superintendent Vincent was the first witness called and he related rather extensively what had transpired in the conference held between himself, Jautz, and the relator on May 9, 1960, prior to the filing of the charges. This testimony included relator's admission to Vincent that he had said and had done a number of the various things which were later set forth in the charges and the findings of fact. Therefore, in view of Vincent's testimony it is not surprising that certain board members may have believed such testimony and prejudged the controversy before hearing all of the evidence adduced in behalf of the relator.

We must assume that a majority of the board did properly perform their duties as members of a quasi-judicial agency, and did base their findings and conclusions upon all of the testimony presented. There is a presumption that public officials discharge their duties or perform acts required by law in accordance with the law and the authority conferred upon them, and that they act fairly, impartially, and in good faith. *Bohn v. Sauk County* (1954), 268 Wis. 213, 67 N. W. (2d) 288; 31 C. J. S., Evidence, p. 798 *et seq.,* sec. 146. It is our considered judgment that the particular statements and questions on the part of but a small portion of the 15 board members, none of which were shown to be based on anything but the prior testimony in the case, do not establish a denial of due process to the relator.

A more-meritorious contention of the relator is that concerning the incident relating to the book, "A History of Sexual Customs," by Richard Lewinsohn, which is the subject of findings of fact Nos. 23, 24, and 25. Parenthetically, while finding No. 23 states that the boy to whom relator loaned the book was fourteen years of age, he actually lacked less than one month of being fifteen; and the fact, that the boy's mother knew and at least impliedly consented to the receipt by her son of a book on sex, appears nowhere in the findings. Frankly, we are surprised that counsel for the board, who drew the findings of fact, should have included these three findings. This is because the charges against relator only charge him with conduct which occurred in his speech classes during the second semester of the 1959–1960 school year. The book incident clearly occurred in the first semester. Furthermore, the book was loaned to a student in one of relator's ninth-grade English classes.

The announced purpose of counsel for the board, in offering testimony with respect to the loaning of such book, was to establish that relator had received an advance warning

from his principal that discussions of sex would not be tolerated in his classes. However, Jautz's testimony failed to establish any such general warning. The warning given to relator was confined specifically to books or material of a similar nature to "A History of Sexual Customs." Thus, because the testimony relating to the book incident was originally offered for the limited purpose of establishing prior warning, it should not have been later utilized by counsel in an attempt to establish an act of misconduct, especially when the time element was extraneous to that stated in the charges. The fact that relator's counsel did not object to the book's being received in evidence affords no justification.

The inclusion of findings of fact Nos. 23, 24, and 25 have caused this court no little concern in passing on this appeal. Not only are we troubled by the aspect of lack of fair play in their inclusion, but also by the fact that we doubt if the loaning of the book in itself constituted such lack of good behavior as would substantiate a discharge. We state this advisedly after examining the book as one of the exhibits in the record.

However, when we apply the test of whether the board would have reached the same result, *i.e.*, ordering relator's discharge, if findings Nos. 23, 24, and 25 had been omitted, it is our opinion that they would. This is because the prior findings of fact so clearly establish lack of good behavior that we cannot believe the book incident was determinative of the result. Therefore, we conclude that we should not reverse and remand for a new hearing before the board.

Lastly, relator complains that the findings of fact and conclusions of law were drafted by counsel for the board, that they were not submitted to relator before the board acted thereon, and that counsel for relator was not accorded a like privilege of submitting proposed findings of fact and conclusions of law. The record establishes that counsel for the board drafted such findings and conclusions at the

board's request. While it would have been better practice for counsel for the board to have submitted his draft of the findings and conclusions to relator's counsel in advance of board action thereon, and for the board to have accorded relator's counsel the like privilege of drafting proposed findings and conclusions, we find no lack of due process in such omissions. Administrative boards in performing quasi-judicial functions are not required to follow all the rules of procedure, and customary practices, of courts of law. As this court stated in *Gray Well Drilling Co. v. State Board of Health, supra,* at page 419:

"The functions of administrative agencies and courts are so different that the rules governing judicial proceedings are not ordinarily applicable to administrative agencies, unless made so by statute. It is not the province of courts to prescribe rules of procedure for administrative bodies, as that function belongs to the legislature."

*Validity of the Suspension Without Pay.*

Superintendent Vincent temporarily suspended relator without pay on May 9, 1960, pursuant to board rule sec. 3.43. Relator attacks the validity of his suspension pursuant to this rule. Rule sec. 3.43 provides:

"3.43    Suspension. The superintendent may, in an emergency, temporarily suspend a principal or teacher without pay, reporting his action and reasons therefor to the committee on appointment and instruction at its next regular meeting. That committee may recommend the discharge of such principal or teacher to the board."

The board clearly would have no power to promulgate a rule which is inconsistent, or in conflict, with the Milwaukee teachers' tenure statute, sec. 38.24 (18), Stats. Such statute provides that no teacher having tenure "shall be discharged, except for cause upon written charges, which

shall after ten days' written notice thereof to such teacher, upon such teacher's request, be investigated, heard, and determined by the board of school directors."

In so far as the effective date of discharge is concerned, we interpret the statute as providing that a discharge is not effective until hearing and determination by the board if the teacher, during the ten-day period following receipt of the notice of the charges, requests a hearing thereon. If no hearing is requested during this ten-day period, then the discharge is effective at the end of that period, unless the notice of discharge should have specified a later effective date. We also deem that a necessary concomitant result of this interpretation is that any salary due the teacher under his contract of employment would continue until the effective date of discharge. Thus, to permit a teacher to be suspended without pay, pending the filing of charges, would have the effect of making the discharge date retroactive to the date of such suspension in so far as pay is concerned.

Therefore, it is our conclusion that the part of board rule sec. 3.43, which permits a teacher having tenure to be suspended without pay, contravenes sec. 38.24 (18), Stats., and is invalid. Inasmuch as the suspension before us on this review is of this nature, it must be held invalid with respect to its effect of depriving relator of his salary prior to discharge. This requires that the judgment below be modified in accordance with this determination.

*By the Court.*—The judgment is modified so as to invalidate the suspension of relator without pay prior to discharge and, as so modified, is affirmed. No costs shall be taxed by either party upon this appeal.

MARTIN, C. J., and HALLOWS, J. (*concurring*). We concur in the result but do not agree with much of the dicta and the reasoning of the majority. Much of what has been said would have been better off unsaid. We especially

object to the proposition advanced that a teacher certified to teach history, English, and speech can discuss a controversial subject of sex in his speech class as a teacher certified to teach biology might discuss it in a biology class in the absence of any rule of the school authorities or any specific warning that sex was not to be the subject of discussion in speech classes.

A teacher is hired for his competency to teach certain subjects. Sex education is a subject matter for which a teacher should be especially competent to teach. A parent and the school authorities have a right to expect that children are not going to be exposed to comments, discussions, and personal opinions of a teacher on sex who had not been certified to teach such subject in classes which do not relate to such subjects. There need be no rule of school authorities prohibiting the same or any specific warning to the teacher not to discuss. sex in his classroom unless specifically authorized.

The majority opinion fails to recognize the right of the parent to determine whether his child shall be taught about sex in the public schools. The subject is optional. The concern of the parent as to who is to teach the subject and what his or her background and qualifications are, and the parent's right to visit the class in which the subject is discussed, are all ignored in the majority opinion. Only one qualified and so certified by the proper authorities should be allowed to undertake to teach this delicate subject and only in a class expressly held for that purpose.

A parent has the right to visit such a class to determine how such instructions are being given, who is giving the instructions, and in general know of the existing conditions. A parent should not be forced to visit each and every class which his child attends to determine whether sex education is being given and if it is, how it is being handled.

What has happened in this case may well be taken as an example of what we may expect if sex education is being given in classes other than those designated for that purpose.

Under the majority opinion, an unqualified, unauthorized person, entirely unfit, may have his fling at teaching or instructing in sex education with little fear of the consequences, except perhaps a mild censure, unless the school board adopts a rule prohibiting such activity. It seems to us to be bad in itself, not bad because it is prohibited, *mala in se,* not *mala prohibita.*