# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP2244 |

| | |
|---|---|
| COMPLETE TITLE: | Village of Slinger,<br>      Plaintiff-Respondent,<br>    v.<br>Polk Properties, LLC and Donald J. Thoma,<br>      Defendants-Third-Party<br>      Plaintiffs-Appellants-Petitioners,<br>    v.<br>Russell Brandt, Rick Gundrum, Jeff Behrend, Lee<br>Fredericks, John Dukelow, Richard Kohl, Dean<br>Otte, Jessi Balcom and ABC Insurance Company,<br>      Third-Party Defendants. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 388 Wis. 2d 475,934 N.W. 2d 475
(2019 – unpublished)

| | |
|---|---|
| OPINION FILED: | April 1, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 10, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Washington |
|   JUDGE: | Sandy A. Williams |

JUSTICES:
REBECCA GRASSL BRADLEY, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. ZIEGLER, J., filed a concurring opinion.
NOT PARTICIPATING:
HAGEDORN, J., did not participate.

ATTORNEYS:
    For the defendants-third-party-plaintiffs-appellants-petitioners, there were briefs filed by *Colleen W. Jones, Terry J. Booth*, and *Rogahn Jones LLC,* Waukesha. There was an oral argument by *Terry J. Booth*.

For the plaintiff-respondent, there was a brief filed by *H. Stanley Riffle* and *Municipal Law & Litigation Group, S.C.*, Waukesha. There was an oral argument by *H. Stanley Riffle*.

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No.  2017AP2244
(L.C. No.  2011CV1224)

STATE OF WISCONSIN          :          IN SUPREME COURT

**Village of Slinger,**

      **Plaintiff-Respondent,**

    **v.**

**Polk Properties, LLC and Donald J. Thoma,**

      **Defendants-Third-Party
      Plaintiffs-Appellants-Petitioners,**

    **v.**

**Russell Brandt, Rick Gundrum, Jeff Behrend, Lee Fredericks, John Dukelow, Richard Kohl, Dean Otte, Jessi Balcom and ABC Insurance Company,**

      **Third-Party Defendants.**

**FILED**

**APR 1, 2021**

Sheila T. Reiff
Clerk of Supreme Court

---

REBECCA GRASSL BRADLEY, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. ZIEGLER, J., filed a concurring opinion.

BRIAN HAGEDORN, J., did not participate.

---

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded to the circuit court.*

¶1   REBECCA GRASSL BRADLEY, J.   Polk Properties, LLC and its sole member, Donald J. Thoma (collectively, "Polk"[1]), seek review of the court of appeals decision, which affirmed the circuit court's order requiring Polk to pay forfeitures for zoning violations, damages for the Village of Slinger's lost property tax revenue, and attorney's fees.[2]   Whether these forfeitures, damages, and fees can be sustained depends upon whether Polk abandoned the legal nonconforming use of the property after its zoning classification was changed from agricultural to residential.   Applying Wisconsin's two-part test for abandonment of a nonconforming use set forth in State ex rel. Schaetz v. Manders and State ex rel. Morehouse v. Hunt,[3] we conclude that Polk did not abandon the lawful nonconforming use because it continued to use the property in the same manner in which it had been used before the zoning change.   It is undisputed that the farmer who farmed the land before Polk acquired it continued to cut and remove vegetation on the property after Polk purchased it and after the rezoning. Because the agricultural use continued without cessation, Polk

---

[1] We refer to Polk Properties and Thoma collectively as "Polk" except when necessary to refer to them separately.

[2] The court of appeals affirmed the summary judgment granted by the Honorable Sandy A. Williams, Washington County Circuit Court.   See Village of Slinger v. Polk Props., LLC, No. 2017AP2244, unpublished slip op., (Wis. Ct. App. July 10, 2019).

[3] State ex rel. Schaetz v. Manders, 206 Wis. 121, 238 N.W. 835 (1931); State ex rel. Morehouse v. Hunt, 235 Wis. 358, 291 N.W. 745 (1940).

remained in compliance with the applicable zoning code provisions and Polk's use of the property constituted a lawful nonconforming use for which it cannot be penalized. Accordingly, we reverse the decision of the court of appeals and vacate the circuit court's order imposing forfeitures, its monetary judgment for real estate taxes, its order authorizing special assessments, special charges, and fees to be levied against Polk, and its order enjoining Polk from using the property for agricultural purposes. We remand to the circuit court for further proceedings consistent with this decision.

I

¶2 This case arises out of a long-term legal conflict between the Village of Slinger and Polk, including an earlier appearance in this court. See Thoma v. Village of Slinger, 2018 WI 45, 381 Wis. 2d 311, 912 N.W.2d 56.[4] We recite only the background necessary in order to resolve the legal issue presented.

¶3 Polk's property comprises 82 acres of rural land located in the Village of Slinger, which the Melius family

---

[4] Thoma v. Village of Slinger, 2018 WI 45, 381 Wis. 2d 311, 912 N.W.2d 56, involved the consolidation of two cases, resulting in a decision of this court that Polk had failed to present enough evidence to the Village of Slinger Board of Review sufficient to overturn the 2014 tax assessment, which had been based on a change in the classification of the property from "agricultural use" to "residential use." Id., ¶¶2, 7.

operated as a farm before Polk purchased the parcel in 2004.[5] Polk worked with the Village of Slinger on his proposed plan to convert the farmland to a residential subdivision known as Pleasant Farm Estates, which would consist of three phases of development over the course of several years. In February 2007, the Village of Slinger approved Polk's planned residential subdivision development. Installation of the infrastructure for the development began in June 2007 and was completed in August 2008. Two of the lots in phase one of the project were sold and residential homes were constructed on those lots. Sales of additional lots stalled, however, due to the 2008 economic recession and the collapse of the real estate market.

¶4 Throughout the entire development project, Ronald Melius continued to farm the property by cutting and removing

---

[5] The date of purchase is unclear from the record. There are references to Polk having purchased the Melius farm in 2004 or 2005. The court of appeals said "Polk purchased the property in 2006 in order to develop the farmland into a residential subdivision." Village of Slinger v. Polk Props., LLC, No. 2017AP2244, unpublished slip op., ¶2 (Wis. Ct. App. July 10, 2019). On November 16, 2005, Polk petitioned the Village of Slinger to rezone the property from an A-1 Agricultural zone to an R-2 Residential zone, and the Village granted the request on December 19, 2005. The exact date of Polk's purchase of the Melius farm is immaterial to our resolution of the legal issue presented.

vegetation from the land.[6] This continuous farming formed the basis for the Village of Slinger's lawsuit against Polk, in which the Village of Slinger sought an injunction from the circuit court ordering Polk to stop the agricultural use of the property. Melius' continued farming of the property is the particular conduct that led the circuit court to conclude Polk violated the residential zoning ordinance as well as the circuit court's order, for which that court found Polk in contempt. After many motions and multiple hearings, the circuit court granted summary judgment in favor of the Village of Slinger and ordered Polk to pay the Village of Slinger "daily forfeitures" because it "used or permitted use of the subject property for agricultural purposes continuously from before October 7, 2009, through August 21, 2017." Ultimately, the circuit court ordered Polk Properties, LLC to pay to the Village of Slinger $28,760, representing daily zoning violation forfeitures, as well as $48,953.26 in additional real estate taxes covering tax years 2009 to 2013. The circuit court additionally ordered Thoma to

---

[6] A precise definition of "farming" is not required for us to resolve the legal issue presented. Polk contends that Melius' farming consisted of cutting and removing the grasses that were growing on the property. The Village of Slinger contends that the "cutting and removing" constituted improper agricultural use of the property in violation of the residential zoning code. No one disputes that the property was being used for such farming continuously—both before Polk purchased the property and after the property's zoning classification was changed from agricultural to residential. It is therefore not necessary for this court to specifically define "farming," or "agricultural use" in the context of zoning classification versus "agricultural use" for tax assessment purposes.

pay to the Village of Slinger $28,760, representing daily zoning violation forfeitures as well as $12,017 for additional real estate taxes covering tax years 2009 to 2013.

¶5 Polk appealed the circuit court's orders and the court of appeals affirmed. Relying on an opinion from the Rhode Island Supreme Court, Duffy v. Milder, 896 A.2d 27 (R.I. 2006), the court of appeals decided that Polk had abandoned its legal nonconforming use. Village of Slinger v. Polk Props., LLC, No. 2017AP2244, unpublished slip op., ¶20 (Wis. Ct. App. July 10, 2019) (citing Duffy, 896 A.2d at 38-39). Polk petitioned this court for review, which we granted.

II

¶6 We review the grant of summary judgment against Polk de novo. CED Props., LLC v. City of Oshkosh, 2018 WI 24, ¶17, 380 Wis. 2d 399, 909 N.W.2d 136 ("We independently review a grant of summary judgment using the same methodology of the circuit court and the court of appeals." (quoted source omitted)). Resolution of this dispute requires us to interpret and apply the Village of Slinger's ordinances, an issue of law we review de novo. Town of Rhine v. Bizzell, 2008 WI 76, ¶13, 311 Wis. 2d 1, 751 N.W.2d 780 ("The interpretation and application of an ordinance to an undisputed set of facts is a question of law, which this court decides de novo.") (quoted source omitted).

III

¶7 The issue in this case is whether Polk abandoned the nonconforming use of its property after the zoning

6

classification was changed from agricultural to residential use. Polk maintains that the cutting and removing of the vegetation on the property was not abandoned after purchase, but in fact occurred continuously as part of the maintenance of the property. The Village of Slinger agrees that the farming occurred continuously, but argues that specific actions Polk took to convert the property into a residential subdivision constituted abandonment. Specifically, the Village of Slinger pinpoints Polk's request for the zoning change, the Subdivision Development Agreement for Pleasant Farm Estates ("the Development Agreement"), which limited the property to residential use,[7] and the Declaration of Covenants, Conditions and Restrictions of Pleasant Farm Estates ("the Declaration") with residential restrictions executed and recorded by Polk.[8]

---

[7] It is undisputed that the Development Agreement was entered into to develop the property into a residential subdivision. A specific residential limitation does not exist in the portion of the 2007 Development Agreement in the record. The 2008 Amended Development Agreement, however, does specifically state that Polk's subdivision "was zoned for only single-family use."

[8] Article V of the Declaration of Covenants, Conditions and Restrictions of Pleasant Farm Estates ("the Declaration") executed and recorded by Polk states, in relevant part, that "[e]ach Lot shall be occupied and used only for single family residential purposes and for no other purpose. No business, commercial or individual activity (except as allowed under applicable zoning codes) shall be conducted on any lot . . . ." However, Article X of the Declaration reserves the right of Polk Properties, LLC to "use the Outlots, and any unsold Lots in any manner as may facilitate the sale of Lots including, but not limited to, maintaining a sales and/or rental office or offices, models and signs and/or showing the Lots."

¶8 The court of appeals agreed that these specific acts by Polk constituted legal abandonment regardless of any farming still taking place on the property. Rather than relying on Wisconsin law, however, the court of appeals rested its determination on a single foreign case at odds with our own jurisprudence. Wisconsin law requires two elements for abandonment of a legal nonconforming use: (1) actual cessation of the nonconforming use and (2) an intent to abandon the nonconforming use. See Schaetz, 206 Wis. at 124; Morehouse, 235 Wis. at 369-70. Although Polk's specific acts may signify an intent to abandon the nonconforming use, the undisputed fact that Polk continued farming on the property confirms there was no actual cessation of the nonconforming use. Wisconsin's two-pronged abandonment test requires satisfaction of both factors; accordingly, the court of appeals erred in concluding Polk abandoned the nonconforming use, and we reverse its decision.[9]

---

[9] Relying on State ex rel. Peterson v. Burt, 42 Wis. 2d 284, 166 N.W.2d 207 (1969), Justice Annette Ziegler's concurrence recasts this case as a statutory claim neither party raised nor asked us to resolve. In Peterson, "[t]he sole issue presented" was "as follows: Does sec. 28.05(3)(f) 1, Madison General Ordinances, providing for relinquishment of nonconforming use if such use is discontinued for a continuous period of one year, eliminate the necessity of proving intent to abandon?" In this case, there is no dispute that Polk continued the nonconforming agricultural use of the property, which prompted the Village of Slinger to (successfully) seek an injunction against Polk in order to stop its agricultural use and for which the Village of Slinger received an award of forfeitures and damages. Not surprisingly, neither party in this case asked the court to apply the 12-month time period for discontinuance set forth in Wis. Stat. § 62.23(7) and in Village of Slinger Zoning Ordinance § 8.01 because both parties agree that Polk continued its agricultural activity on the property, rendering the statutory

¶9    Generally, when the zoning restrictions applicable to a property are changed, property owners may continue to use their property in a manner that was allowed under the prior zoning ordinance.  See Wis. Stat. § 62.23(7)(h) (2017-18).[10] Although prohibited under the newly applicable zoning ordinance, the existing use becomes a lawful nonconforming use.  "Land use qualifies as 'nonconforming' if there is an active and actual use of the land and buildings which existed prior to the commencement of the zoning ordinance and which has continued in the same or a related use until the present."  Waukesha Cnty. v.

_____

timeframe irrelevant.

The crux of the Village of Slinger's argument rested on its contention that Polk's nonconforming use was not legal.  Unlike Peterson, in this case Slinger argued, and the court of appeals agreed, that Polk abandoned its unlawful agricultural use not by discontinuing it, but by seeking the zoning change to residential; entering a Developer's Agreement to convert the property to residential; and recording a Declaration restricting the property to residential use only.  Village of Slinger v. Polk Props., LLC, No. 2017AP2244, unpublished slip op., ¶¶20-22 (Wis. Ct. App. July 10, 2019).  This court was asked to determine whether such actions constitute abandonment of the nonconforming use, notwithstanding its uninterrupted continuance.  Justice Ziegler erroneously contends the two-part test for abandonment of a nonconforming use was "abrogated" 80 years ago.  Concurrence, ¶29.  To the contrary, both Schaetz and Morehouse, which set forth the test, remain good law and have not been "abrogated," "set aside," or "abandoned."  Because farming undisputedly occurred continuously on Polk's property before, during, and after the rezoning, the 12-month time period for discontinuance set forth in Wis. Stat. § 62.23(7) and in Village of Slinger Zoning Ordinance § 8.01 is simply irrelevant to the analysis.  Justice Ziegler's concurrence answers a question the parties did not pose.

[10] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

Seitz, 140 Wis. 2d 111, 115, 409 N.W.2d 403 (Ct. App. 1987) (citation omitted). Section 62.23(7)(h) provides:

> Nonconforming uses. The continued lawful use of a building, premises, structure, or fixture existing at the time of the adoption or amendment of a zoning ordinance may not be prohibited although the use does not conform with the provisions of the ordinance. The nonconforming use may not be extended . . . .

(Emphasis added.) The Village of Slinger's Zoning Ordinance adopts this general rule. Ordinance § 8.01 provides:

> The lawful nonconforming use of a structure, land or water, existing at the time of the adoption or amendment of this ordinance may be continued, although the use does not conform with the provisions of this ordinance, however; A. Only that portion of the land or water in actual use may be so continued and the structure may not be extended, enlarged, reconstructed, substituted, moved, or structurally altered except when required to do so by law or order or so as to comply with the provisions of this ordinance.

(Emphasis added.) If the property owner abandons the lawful nonconforming use after the property's zoning classification has changed, then the property may be used only in a manner consistent with its current zoning classification. Similarly, if the property owner changes or enlarges the prior nonconforming use, he is thereafter bound by the current zoning restrictions. Waukesha Cnty. v. Pewaukee Marina, Inc., 187 Wis. 2d 18, 24, 522 N.W.2d 536 (Ct. App. 1994); Wis. Stat. § 62.23(7)(h) ("If the nonconforming use is discontinued for a period of 12 months, any future use of the building, premises, structure, or fixture shall conform to the ordinance.").

10

¶10 As set forth by this court almost a century ago, Wisconsin applies a two-part test to determine whether a property owner has abandoned the prior use: (1) actual cessation of the nonconforming use, which requires more than just a "mere suspension" of the use; and (2) an intent to abandon the nonconforming use. See Schaetz, 206 Wis. at 124; Morehouse, 235 Wis. at 373. In State ex rel. Schaetz v. Manders, 206 Wis. 121, 238 N.W. 835 (1931), this court held that, in the context of new zoning ordinances, "abandonment" of a nonconforming use requires the owner to "voluntar[ily], affirmative[ly], [and] complete[ly] act" to cease the nonconforming use. 206 Wis. at 124.

¶11 In Schaetz, a dairy farm went into receivership following a downturn in the economy and stopped conducting dairy manufacturing on the premises. Id. at 122. Around this time, the City of Green Bay passed a local ordinance prohibiting the use of this land for dairy purposes, with the exception of legal nonconforming uses. Id. at 123. Following the enactment of this ordinance, a local buyer acquired the property and attempted to restart dairy manufacturing on the land. Id. at 122-23. The Schaetz court held that the plaintiff could return to using the property as a dairy, despite the local ordinance, because the former owner only temporarily suspended the nonconforming use and never fully ceased operating a dairy. Id. at 124. As the court explained, "mere suspension" of a nonconforming use does not constitute abandonment. See id.

11

¶12 In State ex rel. Morehouse v. Hunt, 235 Wis. 358, 291 N.W. 745 (1940), this court reiterated its holding in Schaetz. Specifically, the Morehouse court stated that "mere cessation of a non-conforming use under the terms of a zoning ordinance does not destroy the right to continue it or prevent resumption of it." Id. at 369-70. The first element of abandonment is clear: in order to abandon a nonconforming use, the property owner must actually cease engaging in the nonconforming use, and a "mere suspension" of that use does not signify abandonment. The Morehouse court also established a second element of abandonment: the property owner must actually intend to abandon the nonconforming use.

¶13 In Morehouse, a property owner used his home as a fraternity house and continued to do so as a lawful nonconforming use after a zoning ordinance prohibited it. Id. at 361. After the owner sold the property, the new owner began renting rooms on the property for residential purposes—in compliance with the zoning ordinance. Id. at 362. This was the only commercially viable use for the property at the time. Because demand for leasing the property as a fraternity house collapsed during the Great Depression, "there was no present prospect of sale for use as a fraternity house, and no opportunity or prospect of opportunity to lease it for that purpose." Id. at 363-64. However, the owner "constantly contemplated eventual disposition to a fraternity if opportunity offered." Id. at 364.

12

¶14 When the owner eventually received an offer to purchase from a college fraternity, it was conditioned on procurement of permission for this particular use under the zoning ordinance. Id. The issue before the Board of Zoning Appeals and eventually the Morehouse court was whether or not the owner had abandoned the nonconforming use when he leased the property to a family for one year. Id. at 370. The Morehouse court upheld the Board's and the lower court's conclusion that the owner "did not intend to abandon the right of use of . . . [the] fraternity house" and that the "use of it for a residence was intended to be only temporary until opportunity should arise to sell it for that purpose [as a fraternity house]." Id. at 367 (emphasis added). Because the owner never intended to abandon using the property as a fraternity house, he was entitled to engage in the nonconforming use despite a zoning ordinance prohibiting that use. Id. at 370.[11]

¶15 Instead of simply applying Wisconsin law, the court of appeals relied entirely on the Duffy v. Milder case from Rhode

---

[11] This two-factor analysis——an actual cessation of the nonconforming use coupled with an intent to do so——prevails in jurisdictions around the country. The Indiana Supreme Court has held that "[a]bandonment requires the concurrence of an intent to abandon and a voluntary act or failure to act signifying abandonment." Stuckman v. Kosciusko Cnty. Bd. of Zoning Appeals, 506 N.E.2d 1079, 1082 (Ind. 1987). Likewise, the Massachusetts Supreme Court held that "abandonment" requires "'the concurrence of two factors: (1) the intent to abandon and (2) voluntary conduct, whether affirmative or negative, which carries the implication of abandonment.'" Derby Ref. Co. v. City of Chelsea, 555 N.E.2d 534, 538 (Mass. 1990) (quoted source omitted).

13

Island. 896 A.2d 27 (R.I. 2006). In that case, the property was originally a horse farm before being sold to developers, the Malms, who intended to convert it into residential condominiums. Id. at 29-30. The Malms petitioned the town to rezone the property from farming to residential. Id. at 29. Their rezoning request was granted, but the town required an easement area over a 2.7 acre portion of the land, to remain in conservation and for recreational use by the condominium owners. Id. After the condominium project was completed, the Malms sold a single-family residence to the Milders, who were given assurances they could "keep horses" on the property. Id. at 30. The Malms secured a zoning certificate, which stated "the keeping of horses on this lot is currently considered a lawfully nonconforming and permitted use and shall be allowed to continue until such time as an overt action for discontinuation is conducted by the property owner." Id. Thereafter, the Milders asked the town for "permission to install an internal grazing management system as well as a riding area, but the Town Council unanimously denied their request." Id. at 30-31. Despite this denial, the Milders "grazed approximately sixteen animals, including llamas, alpacas, goats, and horses" and "erected internal fences across the open space easement area." Id. at 31. The Milders' actions led to complaints from neighbors as well as the condominium association, which sought a court order to enjoin the Milders from using horses on the property and from interfering with others' "access to the open space easement area." Id. at 32. The neighbors also alleged that "the

14

Milders' conduct violated the express language of the open space easement" and "constituted a nuisance." Id. at 31-32.

¶16 Although the Rhode Island Supreme Court recognized that the Malms were entitled to use the property as a horse farm when they purchased it, that court concluded that "the Malms abandoned this privilege when they chose to develop their property." Id. at 38. Applying the applicable ordinance language defining abandonment of a non-conforming use as "either an owners' (or legal tenant if applicable) overt act or a failure to act which demonstrates that there is neither a claim nor any interest in continuing the nonconforming use" the court concluded that a successful "petition to rezone a lot to which a nonconforming use is attached is clearly such an overt act." Id. The Duffy court explained that "[t]his overt act manifested their intent to abandon the use of their property as a horse farm." Id. at 39. As a result, the Duffy court decided that the Milders "did not acquire any nonconforming use to keep horses on the property because any such rights had been extinguished before the property was conveyed to them." Id.

¶17 Although Duffy also involved a zoning change requested by a property owner to develop a former farm into a condominium project, the governing ordinance in Duffy differs substantially from the Village of Slinger's nonconforming use ordinance, as well as Wisconsin law. While an intent to abandon may suffice to establish abandonment under Rhode Island law (or at least under the ordinances of the Town of East Greenwich), Wisconsin

15

law requires something more: the actual cessation of the nonconforming use, rendering Duffy unpersuasive and inapposite.

¶18 There is no dispute that the farming on Polk's property was a lawful use of the property under the agricultural zoning in place before the property was rezoned to residential use. To determine whether that legal nonconforming use was abandoned by Polk, rendering any farming of the property in violation of the zoning ordinance, requires the application of Wisconsin's two-part abandonment test. We therefore consider whether there was an actual cessation of the farming activity on Polk's property, and if so, whether Polk demonstrated an intent to abandon farming on the property.

¶19 In order to establish a zoning violation, the property owner must have actually stopped the nonconforming use of the property. See Schaetz, 206 Wis. at 124 (the owner must voluntarily, affirmatively, and completely stop the nonconforming use). In this case, complete cessation never happened, at least until the circuit court imposed sanctions against Polk following the hearing on September 5, 2017. No one disputes that Melius continuously farmed the property before the rezoning, during the entire time Polk attempted to develop this property, and after the rezoning (until September 2017). The Village of Slinger has repeatedly complained about Polk's ongoing agricultural use of the property, taking successive legal steps in an attempt to force Polk to stop all farming activities on the property.

16

¶20 The Village of Slinger concedes that Polk did not actually stop farming, but contends that complete cessation of farming activity was not required to satisfy the cessation element of the abandonment test. The Village of Slinger believes that Polk abandoned the nonconforming use because Polk sought and obtained the rezoning, entered into the Development Agreement restricting the property to residential use, and recorded the Declaration, which explicitly stated that Polk "intends to develop a subdivision for residences." The Village of Slinger further argues that installing residential infrastructure and building a couple of homes on the property constituted a cessation of agricultural use even if farming continued on the remaining parts of the property. We disagree. While each of these actions may evidence Polk's intent to stop farming the property, none of them establish actual cessation of farming.

¶21 Requesting a zoning change from agricultural to residential in order to convert farmland into a residential subdivision undoubtedly demonstrates the property owner's intent to stop farming the property. Entering into the Development Agreement and recording the Declaration for a residential subdivision also expressed Polk's intent to stop farming the property. Further, installing roads and infrastructure for utilities, and platting the prior farmland into individual lots to be sold to people who want to build their individual residences upon them, all manifest an intent to stop farming the property. The record irrefutably conveys Polk's intent to

17

convert the land from agricultural use into a residential subdivision. These acts, however, do not equate to actual cessation of the lawful nonconforming use.

¶22 For nearly a century, Wisconsin has required actual cessation of a legal nonconforming use together with an intent to stop it as prerequisites to abandonment. We have even rejected a "mere suspension" of the nonconforming use in considering whether the actual cessation element had been met. See Schaetz, 206 Wis. at 124. The law requires actual cessation in order to conclude that a property owner has abandoned the legal nonconforming use. The record in this case overwhelmingly demonstrates that Polk did not actually stop farming this property, despite the Village of Slinger's repeated and persistent attempts to end this use.

¶23 The Village of Slinger suggests that cessation of farming on part of the property constitutes legal cessation of that use on the entire property. A portion of Polk's property is no longer being farmed because homes have been constructed on the few lots that were sold, and farming has in fact ceased on the land that now consists of roadways. The Village of Slinger points to this partial cessation as proof that Polk "modified, extended and enlarged" its use, thereby satisfying the abandonment test. The Village of Slinger relies on Waukesha County v. Pewaukee Marina, Inc., 187 Wis. 2d 18, 23-24, 522 N.W.2d 536 (Ct. App. 1994) to support its argument. Pewaukee Marina, however, is inapposite. That case involved a change and expansion of the nonconforming use. The Pewaukee Marina

18

property had been used "as a lake resort providing cottage rentals, boat livery, fuel and bait and minor motor repair" before a zoning change converted the property to "residential and rendering [the property owner's] use nonconforming." Seitz, 140 Wis. 2d at 114. The business continued to operate as a marina because zoning law protected the original nonconforming use. Id. Seven years later, the marina changed and enlarged the nonconforming use when it "added a retail store and a place for lounging and entertainment" and began selling "boats, boat lifts and piers." Pewaukee Marina, 187 Wis. 2d at 20. A jury found these activities to be a change in the nonconforming use and therefore in violation of the zoning ordinance. Id. at 27.

¶24 In contrast, the changes on the Polk property did not alter or expand the nonconforming use of farming; instead, the changes initiated the development of the property into residential conforming use. The sale of lots, building of homes, and installation of roads and infrastructure actually reduced the nonconforming farming use on the property rather than enlarging it. The Village of Slinger has not presented nor have we located any case suggesting that merely reducing the nonconforming use constitutes actual cessation. To the contrary, courts in other jurisdictions have rejected the argument that decreasing the nonconforming use is tantamount to abandonment. See Feldman v. Zoning Hearing Bd. of City of Pittsburgh, 492 A.2d 468, 470 (Pa. 1985) ("The mere fact that Appellant proposes to reduce the space on the property devoted to the nonconforming use and add to it a conforming use does not

19

constitute an abandonment."); Ernst v. Johnson Cnty., 522 N.W.2d 599, 603 (Iowa 1994) ("A decrease in business does not amount to a per se abandonment of a nonconforming use. Discontinuance of one or more, but not all operations of the quarry did not amount to a voluntary discontinuance of the use.") (citation omitted); Rhine v. City of Portland, 852 P.2d 874, 877 n.1 (Or. Ct. App. 1993) ("[A] nonconforming use can exist or continue at some level that is less than an exhaustive use of the affected property, as long as the ongoing use is of the same nature as and within the scope of the original one or of any altered or expanded use that has been lawfully allowed.").

¶25 Reducing the nonconforming farming use progresses the property into compliance with the residential zoning ordinance. It would be illogical to hold that reducing the nonconforming use somehow enlarges or expands the nonconforming use. If farming occurred on the property before rezoning, it may continue as a legal nonconforming use until the property owner actually abandons that use by terminating the farming altogether.

¶26 This property comprises 82 acres of farmland that Polk intends to convert to a 100-lot residential subdivision. At the time the circuit court granted summary judgment to the Village of Slinger in 2012, only one lot had been sold for this purpose. Because Melius continued to engage in the same cutting and removal of vegetation that he carried out on this land before the zoning classification changed from agricultural to

20

residential, the agricultural activity has continued "in the same or related use" and the farming remains a legal nonconforming use of the property. See City of Lake Geneva v. Smuda, 75 Wis. 2d 532, 536-37, 249 N.W.2d 783 (1977). Residential use on some parts of the property does not negate the continued farming on other portions of the land. When farming continues on part of the property, there has not been complete cessation of this nonconforming use. Partial conforming use does not trump Wisconsin's two-factor test for abandonment of nonconforming use. Determining whether abandonment occurred depends upon application of the two-factor test, not whether some use of the property conforms to the current zoning classification.[12]

IV

¶27 We conclude that Polk did not abandon the lawful nonconforming use of the property because farming occurred continuously on the property before, during, and after the rezoning. Polk never ceased cutting and removing vegetation on the property. Because this nonconforming use continued without cessation, Polk's use of the property constituted a lawful nonconforming use for which it cannot be penalized. Accordingly, we reverse the decision of the court of appeals and

---

[12] Because we conclude that Polk never abandoned the nonconforming use, it is not necessary for us to address any of the additional arguments raised. We decide cases on the narrowest possible grounds. See Water Well Sols. Serv. Grp., Inc. v. Consol. Ins. Co., 2016 WI 54, ¶33 n.18, 369 Wis. 2d 607, 881 N.W.2d 285.

vacate the circuit court's order imposing forfeitures, its monetary judgment for real estate taxes, its order authorizing special assessments, special charges, and fees to be levied against Polk, and its order enjoining Polk from using the property for agricultural purposes. We remand to the circuit court for further proceedings consistent with this decision.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

¶28 BRIAN HAGEDORN, J., did not participate.

22

¶29 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* While I agree with the majority's conclusion that Polk did not abandon its nonconforming use of the property, I write separately because the majority could be read to be unnecessarily breathing life back into a doctrine that the legislature abrogated over 80 years ago. As I explain below, the voluntary abandonment doctrine is inapplicable in cases where the parties rely upon a nonconforming use statute or ordinance with a definite legislative time limit. When the relied upon statute or ordinance contains a definite time limit, the court must determine whether the property owner actually ceased the nonconforming use and discontinued that use for a period of more than the time limit. Because Polk did not discontinue its nonconforming, agricultural use of the property for more than the statutorily definite limit of 12 months, Polk did not lose its right to the nonconforming use. As a result, I do not join the majority opinion and instead respectfully concur.

## I. ANALYSIS

### A. Nonconforming Uses Generally

¶30 Municipalities that seek to adopt zoning and land use schemes do so pursuant to Wis. Stat. § 62.23(7) and its subsections. Town of Rhine v. Bizzell, 2008 WI 76, ¶16, 311 Wis. 2d 1, 751 N.W.2d 780. As part of a comprehensive zoning and land use scheme, "[a] municipality is generally divided into different districts, such as residential, commercial, and industrial." Id., ¶17 (footnote omitted). However, if a

1

municipality adopts a new zoning and land use scheme, there may be properties that, at the time the new scheme is adopted, are being used for a purpose different than what the new scheme allows or permits——known as nonconforming uses. Waukesha Cnty. v. Seitz, 140 Wis. 2d 111, 114-15, 409 N.W.2d 403 (Ct. App. 1987) ("A nonconforming use is a use of land for a purpose not permitted in the district in which the land is situated."). "Land use qualifies as 'nonconforming' if there is an active and actual use of the land and buildings which existed prior to the commencement of the zoning ordinance and which has continued in the same or a related use until the present." Id.

¶31 Just as zoning is a creature of statutes and ordinances, nonconforming use is also based in the language of statutes and ordinances. See, e.g., Wis. Stat. § 62.23(7)(h); Village of Slinger Zoning Ord. Ch. XXXI, §§ 8.01, 8.02 (1999) (hereinafter Slinger Zoning Ordinance)[1]; Bartkus v. Albers, 189 Wis. 539, 208 N.W. 260 (1926) (analyzing a city of Kenosha nonconforming use ordinance); State ex rel. Schaetz v. Manders, 206 Wis. 121, 238 N.W. 835 (1931) (analyzing a city of Green Bay nonconforming ordinance); State ex rel. Morehouse v. Hunt, 235 Wis. 358, 291 N.W. 745 (1940) (analyzing a city of Madison nonconforming use ordinance enacted pursuant to statute).

---

[1] The Village of Slinger amended its zoning ordinances on March 20, 2017. The current version of the zoning ordinance cited in this case is found in the Village of Slinger's Code at Part III, Art. VIII, § 550-75 "Existing Legal Conforming Uses," found at https://ecode360.com/31143081; the current language is substantially the same as that used in 1999.

2

Accordingly, we must interpret the plain language of both the statute and ordinance before we apply it to this case.

¶32 Statutory interpretation "begins with the language of the statute." State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (internal quotations omitted). If its meaning is plain, then our inquiry ends. Id. We give statutory language "its common, ordinary, and accepted meaning." Id. However, "[w]here a statute has been authoritatively interpreted by this court, the party challenging that interpretation must establish that our prior interpretation was 'objectively wrong.'" Waupaca Cnty. v. K.E.K., 2021 WI 9, ¶17, 395 Wis. 2d 460, 954 N.W.2d 366 (quoting State v. Breitzman, 2017 WI 100, ¶5 n.4, 378 Wis. 2d 431, 904 N.W.2d 93).

¶33 Wisconsin Stat. § 62.23(7)(h) is the current iteration of the nonconforming use statute. It provides:

> The continued lawful use of a building, premises, structure, or fixture existing at the time of the adoption or amendment of a zoning ordinance may not be prohibited although the use does not conform with the provisions of the ordinance. . . . If the nonconforming use is discontinued for a period of 12 months, any future use of the building, premises, structure, or fixture shall conform to the ordinance.

The Village of Slinger adopted an ordinance with nearly identical language:

> The lawful nonconforming use of a structure, land or water, existing at the time of the adoption or amendment of this ordinance may be continued, although the use does not conform with the provisions of this ordinance . . . .

3

> If such nonconforming use is discontinued or terminated for a period of twelve (12) months, any future use of the structure, land, or water shall conform to the provisions of this ordinance.

Slinger Zoning Ordinance.[2] It is undisputed that Polk was engaged in agricultural use prior to the Village of Slinger rezoning Polk's property from an A-1 Agricultural zone to an R-2 Residential zone. As such, Polk possessed a legal nonconforming use at the time of the rezoning.[3] Consequently, the question remaining in this case is whether Polk abandoned this nonconforming use.

### B. Abandoning a Nonconforming Use

---

[2] The majority criticizes my concurrence for relying on the language of the statute, asserting that I am "recast[ing] this case as a statutory claim neither party raised nor asked us to resolve." Majority op., ¶8 n.9. However, the majority then points to both Wis. Stat. § 62.23(7)(h) and the Slinger Zoning Ordinance as the legal bases by which a nonconforming use may exist. Id., ¶9. The majority implicitly acknowledges that the legislature is the one who establishes the bases for abandonment, not this court. Id. (listing the statutorily prescribed methods by which a landowner may abandon a nonconforming use). Thus, I am not "recast[ing] this case as a statutory claim"; I am interpreting the statutory bases for abandonment, as we must.

[3] The majority characterizes this assertion as ignoring the question presented in this case, namely whether Polk abandoned its nonconforming agricultural use. Majority op., ¶8 n.9. To the contrary, I am acknowledging the historical record that at the time of the zoning change, Polk engaged in a nonconforming agricultural use——a fact that the majority itself recognizes. Id., ¶18 ("There is no dispute that the farming on Polk's property was a lawful use of the property under the agricultural zoning in place before the property was rezoned to residential use."). With this historical record in mind, I then turn to the exact same question that the majority does: whether Polk abandoned its nonconforming use. Id., ¶18.

4

¶34 Even if a property owner possesses a lawful nonconforming use, the property owner can lose that the right to that use if it is abandoned. As the majority correctly summarizes, "[i]f the property owner abandons the lawful nonconforming use after the property's zoning classification has changed, then the property may be used only in a manner consistent with its current zoning classification." Majority op., ¶9. While the majority and I agree that a nonconforming use may be abandoned, we disagree which is the proper test to determine whether a property owner has abandoned a nonconforming use. The majority reinvigorates the two-part, intent-based abandonment test that this court created nearly a century ago. Id., ¶10. However, not long after we set forth this two-part test, the legislature set aside the test in favor of an objective, time-based test. As such, I would use the language and test the legislature enacted instead of the judicially-created two-part abandonment test.

¶35 In reaching this conclusion, it is important to note the historical development of the two-part abandonment doctrine upon which the majority relies. In 1931, we originally adopted the two-part test for abandonment, which required intent to abandon and actual cessation of use. See Schaetz, 206 Wis. at 124. In Schaetz, we analyzed an ordinance, which provided:

> The lawful use of land existing at the time of the adoption of this ordinance may be conducted, although such use does not conform to the provisions hereof, but if such nonconforming use is discontinued, any future use of said premises shall be in conformity with the provisions of this ordinance.

5

Id. at 123. In that case, the owner of a nonconforming dairy temporarily ceased operations with the intention of finding a buyer to resume the nonconforming use. Id. at 123-24. We applied the two-part abandonment test because it interpreted "[t]he word 'discontinuance' as it is used in the ordinance [a]s synonymous with abandonment." Id. at 124. We held that the owner did not "discontinue" the nonconforming use because the owner did not satisfy the intent prong of the test. Id.

¶36 We echoed this two-part abandonment test in a later case, finding that cessation of a nonconforming use "as a mere temporary matter and with intent that the nonconforming use be resumed when opportunity therefor should arise, did not constitute a 'discontinuance' of the nonconforming use[.]" Morehouse, 235 Wis. at 370.

¶37 However, the legislature later abandoned this approach. Shortly after the Morehouse decision, the legislature changed the statutory language regarding discontinuance to its current form: "[i]f such nonconforming use is discontinued for a period of 12 months, any future use of the building and premises shall conform to the ordinance." § 5, ch. 203, Laws of 1941; accord Wis. Stat. § 62.23(7)(h). After the enactment of this statute, we interpreted the phrase "discontinued for a period of 12 months" in the context of a municipal ordinance:

> We construe these words to mean termination or cessation of the nonconforming use for the twelve months' period. The doctrine of voluntary abandonment as applied in [Schaetz and Morehouse] is not to be extended and applied to substituted nonconforming uses in a county zoning ordinance limiting discontinuance of such nonconforming uses to a definite time limit.

6

State ex rel. Brill v. Mortenson, 6 Wis. 2d 325, 331c, 96 N.W.2d 603 (1959).[4]

¶38 We later clarified the effect of the 12-month discontinuance rule. State ex rel. Peterson v. Burt, 42 Wis. 2d 284, 166 N.W.2d 207 (1969). We held that Brill "supports the proposition that the subjective test of voluntary abandonment is to be rejected in the face of a definite legislative time limit." Id. at 288. Moreover, we specifically addressed the impact Wis. Stat. § 62.23(7)(h) had on the Schaetz and Morehouse decisions. Id. at 290. We held that the enactment of the 12-month definite time period in § 62.23(7)(h) "renders inapplicable the doctrine of 'voluntary abandonment' as contained in the [Schaetz] and Morehouse [c]ases." Id.[5]

¶39 As this history demonstrates, the doctrine of voluntary abandonment is inapplicable to cases where either the

---

[4] The original question presented in Brill was whether Schaetz and Morehouse apply when a nonconforming use ends and a different nonconforming use later begins. State ex rel. Brill v. Mortenson, 6 Wis. 2d 325, 328-29, 94 N.W.2d 691 (1959). We held that Schaetz and Morehouse were inapplicable because the landowner did not intend to resume the same nonconforming use. Id. at 329-30. On rehearing, we addressed whether intent to abandon a nonconforming use should be considered in light of the ordinance containing the 12-month discontinuance restriction. Brill, 6 Wis. 2d at 331c. It was in this rehearing that we interpreted the phrase "discontinued for a period of twelve months." Id.

[5] This reflects the view expressed in Morehouse's dissenting opinion: "The question is not one of intention to abandon a nonconforming use, but whether the acts of the owner have brought him within the provisions of the ordinance [or statute]." State ex rel. Morehouse v. Hunt, 235 Wis. 358, 375, 291 N.W. 745 (1940) (Wickhem, J., dissenting).

7

statute or municipal ordinance contains a definite time limit.[6] In the case at bar, both the statute and municipal ordinance contain the language "discontinued for a period of 12 months." Consequently, we must decide whether this language constitutes a definite time limit to render the voluntary abandonment doctrine inapplicable. This court answered this question when it interpreted identical 12-month period language. Compare Brill, 6 Wis. 2d at 331c ("discontinued for a period of [12] months"); Peterson, 42 Wis. 2d at 287 ("discontinued for a period of 12 months") with Wis. Stat. § 62.23(7)(h) ("discontinued for a period of 12 months"); Slinger Zoning Ordinance ("discontinued or terminated for a period of [12] months"). In both of the previous cases, we concluded that the voluntary abandonment doctrine does not apply. See Brill, 6 Wis. 2d at 331c; Peterson, 42 Wis. 2d at 290. This is an authoritative construction that we must continue to follow. See K.E.K., 395 Wis. 2d 460, ¶17.

¶40 Accordingly, when a nonconforming use statute or ordinance refer to a definite time period, we do not apply the voluntary abandonment test from Schaetz and Morehouse. Instead, we must determine whether the property owner actually ceased use

---

[6] Instead of addressing the historical changes to the words of the statute or our own case law, the majority rejects this conclusion without any analysis. Majority op., ¶8 n.9. The majority fails to wrestle with this historical change to the words of the statute and our case law saying that those changes have meaning. See Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581 ("By analyzing the changes the legislature has made over the course of several years, we may be assisted in arriving at the meaning of a statute.").

for the definite time period. Consequently, regardless of the property owner's actions, including seeking the zoning change, or agreeing to convert the property to a conforming use, the property owner can abandon its nonconforming use only when the property owner ceases the nonconforming use for the statutorily defined time period.[7]

## C. Application

¶41 Applying the proper test here, it is clear that Polk never ceased agricultural use of the property for a 12-month period. As I described above, both the statute and the ordinance have a 12-month definite time period. See supra, ¶33. Accordingly, to have lost the right to use the property for agricultural purposes, Polk must have ceased using the property for agricultural purposes for a period of 12 months.

¶42 Polk never ceased its agricultural use for a period of 12 months. Indeed, Polk never ceased its agricultural use for a

---

[7] Contrary to the majority's assertions, State ex rel. Peterson v. Burt, 42 Wis. 2d 284, 166 N.W.2d 207 (1969), goes to the heart of Slinger's arguments. See majority op., ¶8 n.9. Slinger argues that Polk's actions of "seeking the zoning change to residential; entering a Developer's Agreement to convert the property to residential; and recording a Declaration restricting the property to residential use only" constitute abandonment of the nonconforming use. See id., ¶8 n.9. Under Peterson, these actions are irrelevant because these actions are not actual cessation of use and go to intent. The only inquiry that matters under the statute, ordinance, and our case law is whether Polk ceased its agricultural use for the statutorily defined period of 12 months.

single day. As the majority noted, "complete cessation never happened." Majority op., ¶19.[8]

¶43 As such, I conclude that Polk did not abandon its nonconforming use and may continue its agricultural use of the property.

## II. CONCLUSION

¶44 While I agree with the majority that Polk did not abandon its nonconforming use, I would make clear that the voluntary abandonment doctrine is inapplicable here. I would rely on the objective test that the legislature set forth in the statute——whether the property owner actually ceased use for the legislatively definite time limit. Because Polk never ceased its agricultural use of the property for even a day, let alone the 12-month time limit, I conclude that Polk did not abandon its nonconforming, agricultural use. As a result, I do not join the majority opinion and instead respectfully concur.

¶45 For the foregoing reasons, I respectfully concur.

---

[8] The majority critiques my concurrence for addressing the statute and ordinance because "both parties agree that Polk continued its agricultural activity on the property, rendering the statutory timeframe irrelevant." Majority op., ¶8 n.9. To the contrary, this proves my point. The statutory period is the only relevant inquiry, and the facts of the case show that Polk never ceased its use for the statutorily defined 12-month period. As the statute and our case law demand, the majority should have stopped its inquiry after its conclusion that "complete cessation never happened." Id., ¶19.