COURT OF APPEALS
DECISION
DATED AND FILED

November 5, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1588-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF53

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KYEL R. MELLEN,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Walworth County: PHILLIP A. KOSS, Judge. *Affirmed.*

Before Neubauer, P.J., Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In this appeal from a judgment convicting him of second-degree sexual assault of an unconscious victim and an order denying his postconviction motion, Kyel R. Mellen argues that the trial court erred in failing to instruct the jury at his trial on fourth-degree sexual assault as a lesser-included offense. Mellen also assigns error to the court's conclusion that his trial counsel did not render ineffective assistance in failing to call a specific witness because that witness' testimony would not have changed the trial's outcome. For the reasons that follow, we reject Mellen's arguments and affirm.

## BACKGROUND

¶2 The State charged Mellen with second-degree sexual assault of an unconscious victim in violation of WIS. STAT. § 940.225(2)(d) after Anna reported to law enforcement that about three days earlier, she fell asleep at a party and awoke to Mellen sucking on her breast above the left nipple.[1] Anna reported that Mellen also was masturbating when she woke up and began rubbing his penis on her leg while rubbing her thighs and buttocks with his hand. Anna, her twin sister Allison, Anna's best friend Paige, and Mellen had all been sleeping in the same bed at the party.

¶3 At Mellen's jury trial, Anna testified to the events recounted in the previous paragraph. Anna further testified that after he assaulted her, Mellen left the bedroom around 5:15 a.m. to go to the bathroom. Mellen returned to the bedroom a short time later and fell asleep. Anna then left the bedroom, went to the bathroom, and texted her mom several times at approximately 6:00 a.m. to

---

[1] We use pseudonyms to refer to the victim and her twin sister to protect the victim's privacy.

come to the party to pick her up. Anna ended up leaving the party alone and driving herself back home.

¶4 Anna also testified at trial that before she left the party, Mellen's friend Christian Regalado was the only partygoer awake. Regalado asked Anna what was wrong and tried stopping her from leaving; however, Anna "just told him that [she] had to get out of there and that [she] was going home."

¶5 Later that morning, Mellen became emotional and privately admitted to Anna's twin sister Allison that Anna left because Mellen was touching himself. Mellen reported to Allison that he had "raped her," meaning Anna. Allison testified at trial regarding the events at and after the party, including telling the jury about Mellen confessing to Allison that he had "raped" Anna.

¶6 Regalado also testified at trial. Regalado said that he was sleeping in the living room on the couch in the cabin directly across from the bedroom Anna, Allison, Paige, and Mellen were in on the morning of the sexual assault. Regalado told the jury he saw Mellen come out of the bedroom around 5:30 a.m., go to the bathroom, and go back in the room. He said he then saw Anna go to the bathroom, then back to the bedroom, and then come back out "with like most of her stuff" and "looking around frantically for the rest of her belongings." Regalado could tell Anna "was trying to leave." Later that morning when the remaining partygoers were trying to figure out where Anna was, Mellen approached Regalado and asked to speak to him alone. The two walked down the street toward the lake where Mellen began "to breakdown and there was a lot of, I raped her, I raped her, what is wrong with me?"

¶7 When asked at trial if Mellen provided him with any more detail as to what Mellen confessed he did, Regalado replied, "what I gathered from that

conversation was that [Mellen] had touched [Anna] without her being awake. And that he was touching himself. Um, and that was about all I could make of the situation." Mellen was "[v]ery emotional" and "on the ground on his hands and knees like facing the ground crying." Mellen elected not to testify at trial.

¶8 During the course of the trial, defense counsel requested that the trial court instruct the jury on both the second-degree sexual assault of an unconscious victim as charged and on fourth-degree sexual assault for sexual contact without consent. The trial court declined the request on the ground that fourth-degree sexual assault is not a lesser-included offense of second-degree sexual assault of an unconscious victim. After deliberation, the jury convicted Mellen of second-degree sexual assault of an unconscious victim. The court sentenced him to five years of probation with nine months of conditional jail time.

¶9 Mellen filed a motion for postconviction relief seeking a new trial on the ground that he received ineffective assistance of counsel. Mellen alleged that trial counsel failed to properly investigate and failed to call the party host, Riley Gagliano, to impeach Regalado's trial testimony. To explain, when asked at trial whether he had been using drugs around the time Mellen purportedly confessed to him, Regalado denied that he had anything but a few drinks and some marijuana. However, according to Mellen's motion, Gagliano said that Regalado had admitted to taking psychedelics in the hours before he claimed Mellen had confessed to him. Further, the motion asserted that Gagliano allegedly also was aware that Regalado had bad blood with Mellen because Regalado thought Mellen had been involved with Regalado's former girlfriend who was reportedly seen dancing with Mellen.

¶10     The trial court held an evidentiary hearing on Mellen's postconviction motion. *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). Trial counsel, Regalado, and Gagliano testified. Considering all the trial evidence as well as the hearing testimony, the court concluded that Mellen failed to establish that the outcome of his trial would have been different had trial counsel interviewed Gagliano and called him at trial. Accordingly, the court denied Mellen's postconviction motion. Mellen appeals.

## DISCUSSION

¶11     Mellen raises two issues on appeal. First, he argues that the trial court erred in denying his request to instruct the jury on fourth-degree sexual assault as a lesser-included offense of second-degree sexual assault of an unconscious victim. He next renews his postconviction argument and reasserts that trial counsel rendered ineffective assistance by failing to investigate Gagliano and call him at trial to impeach Regalado's testimony. We address each argument in turn below.

*Lesser-Included Offense*

¶12     A defendant "may be convicted of either the crime charged or an included crime, but not both." WIS. STAT. § 939.66 (2023-24).[2] Whether an offense is a lesser-included offense is a question of law we review de novo. *See State v. Carrington*, 134 Wis. 2d 260, 262, 397 N.W.2d 484 (1986).

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

¶13    Wisconsin courts employ a two-part analysis for determining whether to instruct on a lesser-included offense. *See **State v. Muentner***, 138 Wis. 2d 374, 387, 406 N.W.2d 415 (1987).  First, the court must "determine whether 'the lesser offense is, as a matter of law, a lesser included offense of the crime charged.'" ***State v. Fitzgerald***, 2000 WI App 55, ¶8, 233 Wis. 2d 584, 608 N.W.2d 391 (citation omitted).  Second, the court must consider "whether there is a reasonable basis in the evidence" for a jury to acquit on the greater offense and to convict on the lesser offense. ***Muentner***, 138 Wis. 2d at 387.  Instruction on a lesser-included offense is required only if there are reasonable grounds for both acquittal on the greater charge and conviction on the lesser.  *See **State v. Foster***, 191 Wis. 2d 14, 23, 528 N.W.2d 22 (Ct. App. 1995).

¶14    To determine whether an offense is a lesser-included offense under WIS. STAT. § 939.66(1), we apply an "elements only" test, which requires that "the lesser offense must be statutorily included in the greater offense and contain no element in addition to the elements constituting the greater offense." *See*, *e.g.*, ***Carrington***, 134 Wis. 2d at 265.  Under that framework, "an offense is a 'lesser included' one only if all of its statutory elements can be demonstrated without proof of any fact or element in addition to those which must be proved for the 'greater' offense." ***Hagenkord v. State***, 100 Wis. 2d 452, 481, 302 N.W.2d 421 (1981).  The "elements only" test does not focus "on the peculiar factual nature of a given defendant's criminal activity, but on whether the lesser offense is statutorily within the greater." ***Id.***

¶15    The State argues that fourth-degree sexual assault is not a lesser-included offense of second-degree sexual assault of an unconscious victim because fourth-degree sexual assault requires proof of an element that second-degree sexual assault of an unconscious victim does not.  Specifically, it

6

expounds, fourth-degree sexual assault requires proof that the victim did not consent to the sexual contact.

¶16    Mellen argues that "[i]t makes intuitive sense that *fourth-degree* sexual assault would be a lesser included offense of *second-degree* sexual assault." (Emphasis in original.)  He contends that "[b]oth crimes are located in the same statute and seek to address the same wrong: having sexual contact without a person's consent."  Thus, according to Mellen, "under [WIS. STAT. §] 940.225, unconsciousness *is the same thing as* non-consent." (Emphasis in original.)

¶17    We agree with the State and, applying the elements-only test, we conclude that fourth-degree sexual assault is not a lesser-included offense of second-degree sexual assault of an unconscious victim because the State must prove different elements to sustain a conviction on each offense.  To explain, the elements of second-degree sexual assault of an unconscious victim are: (1) the defendant had sexual contact or sexual intercourse with the victim; (2) the victim was unconscious at the time; and (3) the defendant knew that the victim was unconscious at the time.  WIS. STAT. § 940.225(2)(d); WIS JI—CRIMINAL 1213. The elements of fourth-degree sexual assault are: (1) the defendant had sexual contact with the victim; and (2) the victim did not consent to the sexual contact. Sec. 940.225(3m); WIS JI—CRIMINAL 1219.

¶18    As is plain from comparing the elements, fourth-degree sexual assault requires the State to prove that the victim did not consent to the sexual contact. *Id.*  Second-degree sexual assault of an unconscious victim, on the other hand, does not require the State to prove lack of consent.  WIS. STAT. § 940.225(2)(d); WIS JI—CRIMINAL 1213.  In fact, our supreme court has expressly held that lack of consent need not be proven in cases charging

second-degree sexual assault of an unconscious victim. *See **State v. Sauceda***, 168 Wis. 2d 486, 495-96, 485 N.W.2d 1 (1992) (concluding that "inability to consent to the sexual contact is not a required element of" sexual assault of an unconscious victim). Accordingly, we conclude that the trial court did not err in denying Mellen's request to instruct the jury on fourth-degree sexual assault as a lesser-included offense.[3]

*Ineffective Assistance of Counsel*

¶19    Mellen's second argument on appeal—that the trial court erred in determining that it would not have affected the verdict had trial counsel interviewed Gagliano and called him at trial—boils down to a claim of ineffective assistance of counsel. Mellen's argument rests on his insistence that had counsel called Gagliano at trial, there is a reasonable possibility that the jury would have found him not guilty.

¶20    "Whether counsel was ineffective is a mixed question of fact and law." ***State v. Balliette***, 2011 WI 79, ¶19, 336 Wis. 2d 358, 805 N.W.2d 334 (citation omitted). "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review" independently. ***State v. Breitzman***, 2017 WI

---

[3] Because we conclude that the trial court did not err in declining Mellen's request to provide a jury instruction on fourth-degree sexual assault based on the elements-only test, we need not address Mellen's secondary argument that the evidence at trial regarding the nature of Mellen's crime and confusion as to precisely when Anna awoke supported providing this instruction. *See **Village of Slinger v. Polk Props. LLC***, 2021 WI 29, ¶26 n.12, 396 Wis. 2d 342, 957 N.W.2d 229 (explaining that we decide cases "on the narrowest possible grounds" and do not reach issues we need not reach).

100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. To prove a claim of ineffective assistance of counsel, the defendant must satisfy two tests: first, that counsel's performance was deficient; and second, that counsel's deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If the defendant fails to satisfy either prong, we need not consider the other." *Breitzman*, 378 Wis. 2d 431, ¶37.

¶21 Mellen has asserted prejudice based on trial counsel's failure to investigate and call Gagliano as a witness. We disagree with Mellen and conclude that he has failed to demonstrate prejudice. Therefore, his claim for ineffective assistance of counsel fails, and we need not decide whether counsel performed deficiently in this regard. *See State v. Floyd*, 2016 WI App 64, ¶22, 371 Wis. 2d 404, 885 N.W.2d 156 ("If the defendant fails to prove either prong, we need not address whether the other prong was satisfied.").

¶22 Addressing the prejudice component of ineffective assistance, Mellen contends that "Regalado's testimony was a lynchpin of the State's case" that "could have been yanked" by Gagliano. In Mellen's assessment, Gagliano would have impeached Regalado by testifying about the LSD which, in turn, would have proven Regalado lied under oath when he testified to using only marijuana and alcohol. Gagliano also allegedly knew of tension between Regalado and Mellen caused by Mellen allegedly dancing with Regalado's former girlfriend, which potentially could have given the jury further cause to doubt Regalado's credibility. However, the judge who held the postconviction hearing also presided over the trial and concluded that Mellen could not show prejudice from trial counsel's failures to investigate and call Gagliano as a witness. Mellen fails to persuade us on appeal that the court erred in so concluding.

¶23   First, Gagliano's claim that Regalado said he took LSD sometime during the party was speculative at best—no one at the party saw anyone, including Regalado, taking any drugs harder than marijuana. No one saw Regalado acting strangely or erratically, as one would expect a person on LSD to do. And, Regalado denied taking LSD and denied telling Gagliano he had taken LSD, meaning it would have been his word versus Gagliano's had he testified.

¶24   Moreover, Mellen confessed to both Regalado and Allison that he had "raped" Anna, and Regalado and Allison both told the jury what Mellen told them. Their testimony regarding Mellen's description of what he had done to Anna, including Mellen's shame and regret for having "raped her," was consistent. Thus, even if the jury would have had reason to doubt Regalado's testimony about what he recalled, it would not have affected Allison's testimony. Finally, Mellen fails to explain why any jury would be convinced that Regalado was testifying falsely based on the dancing-girl story when the postconviction hearing testimony was consistent that Regalado had never been in a dating relationship with the girl in question.

¶25   As we have explained, Mellen fails to demonstrate a reasonable probability that had Gagliano been called, the result of the proceeding would have been different. Because Mellen does not persuade us that the court's assessment of this issue is flawed, we affirm the postconviction order denying Mellen a new trial.

**CONCLUSION**

¶26   In sum, for the reasons stated above, we affirm the judgment of conviction against Mellen and the order denying his motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.